**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG <br><br> *Campbell v. Tyco Fire Products, et al.*, No. 2:19-cv-00422-RMG |

**<u>JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT
AND CERTIFICATION OF SETTLEMENT CLASS</u>**

## TABLE OF CONTENTS

I.   CASE HISTORY ................................................................................................. 1

II.  SUMMARY OF THE PROPOSED SETTLEMENT TERMS ............................... 3

    A. Settlement Eligibility ....................................................................................... 4

    B. Qualified Settlement Funds Under the Agreement ........................................... 4

    C. Process for Claims Submission ........................................................................ 5

    D. Role of the Settlement Administrator and Class Notice Administrator ........................ 6

    E. Payment of Attorneys' Fees and Expenses ...................................................... 7

    F. Release of Liability .......................................................................................... 7

III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ................ 8

    A. The Proposed Settlement Class Satisfies Rule 23(a) ....................................... 9

        1.  The Proposed Settlement Class Meets the Numerosity Requirement .............. 9

        2.  The Proposed Settlement Class Meets the Commonality Requirement .......... 9

        3.  The Proposed Settlement Class Meets the Typicality Requirement .............. 10

        4.  The Proposed Settlement Class Meets the Adequacy Requirement ............... 11

    B. The Proposed Settlement Class Satisfies Rule 23(b)(3) ............................... 16

        1.  Common Questions of Law and Fact Predominate ........................................ 16

        2.  A Class Settlement Is Superior to Other Methods for the Proposed Class. ..... 17

IV.  THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........... 18

    A. The Class Has Been Adequately Represented and the Proposed Settlement Was
       Negotiated at Arm's-Length ......................................................................... 20

    B. The Relief Provided by the Proposed Settlement Is More than Adequate ................. 21

    C. The Proposed Settlement Is Reasonable Considering the Risks and Costs of
       Continued Litigation ..................................................................................... 21

    D. The Proposed Settlement Provides a Reasonable Framework for Determining  Fees
       and Costs ...................................................................................................... 23

    E. The Proposed Settlement Is Consistent with the Public Interest ................. 23

V.   THE PROPOSED SETTLEMENT'S ALLOCATION PLAN AND CLAIM FORM ARE
    APPROPRIATE ................................................................................................. 24

VI.  THE COURT SHOULD APPROVE THE NOTICE PLAN AND AUTHORIZE CLASS
    COUNSEL TO DISSEMINATE NOTICE ......................................................... 26

VII.  THE COURT SHOULD APPOINT DAVID R. COHEN, ESQ. AS SETTLEMENT
      ADMINISTRATOR AND MATTHEW GARRETSON, ESQ. AS CLASS NOTICE
      ADMINISTRATOR ............................................................................................ 28

VIII. PROPOSED SCHEDULE OF EVENTS ............................................................. 31

CONCLUSION ................................................................................................................ 31

# **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................ 16

*Beaulieu v. EQ Indus. Servs., Inc.*,
    No. 06 Civ. 400, 2009 WL 2208131 (E.D.N.C. July 22, 2009) ............................. 17

*Brown v. Charles Schwab & Co.*,
    No. 2:07-CV-03852-DCN, 2009 U.S. Dist. LEXIS 114840 (D.S.C. Dec. 9, 2009) ............... 16

*Brown v. Nucor Corp.*,
    785 F.3d 895 (4th Cir. 2015) ................................................................................. 16

*Carson v. Am. Brands, Inc.*,
    450 U.S. 79 (1981) .................................................................................................. 21

*Collins v. Olin Corp.*,
    248 F.R.D. 95 (D. Conn. 2008) .............................................................................. 10

*DeWitt v. Darlington Cnty.*,
    No. 4:11-cv-00740-RBH, 2013 U.S. Dist. LEXIS 172624 (D.S.C. Dec. 6, 2013) ................. 18

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) ................................................................................. 17

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ................................................................................. 16

*In re Mi Windows & Doors Prods. Liab. Litig.*,
    No. 2:12-mn-00001-DCN, 2015 U.S. Dist. LEXIS 184471 (D.S.C. July 22, 2015) ................. 10

*In re Oil Spill by Oil rig Deepwater Horizon*,
    910 F. Supp. 2d 891 (E.D. La. 2012) ............................................................... 17, 24

*Moodie v. Kiawah Island Inn Co., LLC*,
    309 F.R.D. 370 (D.S.C. 2015) ............................................................................... 11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................................ 26

*Noel v. Hudd Distribution Servs.*,
    274 F.R.D. 187 (D.S.C. 2011) ............................................................................... 10

*Robinson v. Carolina First Bank NA*,
    No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 26450 (D.S.C. Feb. 14, 2019) ...... 3, 8, 18, 19

*Runion v. U.S. Shelter*,
    98 F.R.D. 313 (D.S.C. 1983) ................................................................................. 21

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .................................................................... 25

*South Carolina Nat'l Bank v. Stone*,
    139 F.R.D. 335 (D.S.C. 1991) ............................................................................... 18

*South Carolina Nat'l Bank v. Stone*,
   749 F. Supp. 1419 (D.S.C. 1990)............................................................. 23
*Stillmock v. Weis Mkts.*,
   385 F. App'x 267 (4th Cir. 2010) ........................................................... 17
*Temp. Servs. v. Am. Int'l Grp., Inc.*,
   No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 199143 (D.S.C. July 31, 2012).................... 8
*Temp. Servs. v. Am. Int'l Grp., Inc.*,
   No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 86474 (D.S.C. June 22, 2012) ............... 9, 18

## Rules

Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment........................................ 19, 20
Fed. R. Civ. P. 23(a) .................................................................................................. 8, 10
Fed. R. Civ. P. 23(b)(3)......................................................................................... 8, 16, 17
Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 26
Fed. R. Civ. P. 23(e)(1)(A) ........................................................................................... 18
Fed. R. Civ. P. 23(e)(1)(B) .................................................................................. 8, 18, 26
Fed. R. Civ. P. 23(e)(2).................................................................................................. 19
Fed. R. Civ. P. 23(h) ..................................................................................................... 23

## Treatises

A. Conte and H. Newberg, 1 *Newberg on Class Actions* § 3:5 (4th ed. 2002)............................... 9
William B. Rubenstein, 4 *Newberg on Class Actions* § 13:10 (5th ed. 2020)............................ 18
William B. Rubenstein, 4 *Newberg on Class Actions* § 13:44 (5th ed. 2020)............................ 22

Plaintiffs Joan Campbell and Richard Campbell, on behalf of themselves and the putative class, and Defendants Tyco Fire Products L.P., Chemguard, Inc., and ChemDesign Products, Inc. ("Defendants"), respectfully request the entry of an Order of this Court: (i) conditionally certifying a Settlement Class[1] under Rule 23(b)(3) of the Federal Rules of Civil Procedure; (ii) preliminarily approving the terms and conditions of the Settlement embodied in the First Amended Class Settlement and Release Agreement (the "Agreement"), attached to this Motion as Exhibit 1, subject to the Fairness Hearing and final approval by the Court in the Final Approval Order; (iii) finding that the Notice Plan described in Exhibit C to the Agreement and the Class Notice in the form of Exhibit C to the Agreement fairly and adequately describe the terms and effect of the Agreement and the Settlement; give notice of Class Members' right to opt out of the Class Settlement; describe how Class Members may object to approval of the Settlement; give notice of the time and place of the Fairness Hearing for final approval of the Settlement; and satisfy the requirements of Fed. R. Civ. P. 23(e), due process, and Fourth Circuit law regarding notice to Class Members of the Settlement; (iv) appointing and designating Class Counsel as the counsel for the Settlement Class under Fed. R. Civ. P. 23(g); (v) appointing and designating Plaintiffs as the representatives for the Settlement Class; (vi) preliminarily approving the plan of distribution of Settlement proceeds to Class Members; and (vii) for such other and further relief the Court deems just and proper.

## I.    CASE HISTORY

This is an environmental contamination tort case involving claims of exposure, injury, and property damage occurring in the Town of Peshtigo, Wisconsin. Plaintiffs Joan Campbell and

---

[1] Unless otherwise indicated, all capitalized terms in this Motion have the same meaning as set forth in the Agreement attached as Exhibit 1 hereto.

Richard Campbell are residents of Marinette, Wisconsin, and current owners of a property located on North 2995 Shore Drive, Marinette, WI 54143 (hereinafter the "Property"). The Property is located within the Town of Peshtigo. The Property, like a number of other properties in the Town of Peshtigo, has a private well that supplies water for drinking and other uses to the home; there is currently no municipal water system in the Town.

Plaintiffs, individually and on behalf of all others similarly situated, brought suit against Defendants Tyco Fire Products L.P. ("Tyco"), successor in interest to The Ansul Company ("Ansul"), Chemguard, Inc. ("Chemguard"), and ChemDesign Products, Inc. ("ChemDesign") for the alleged contamination of their Property and private water well with PFAS, including perfluorooctanoic acid ("PFOA") and/or perfluorooctanesulfonic acid ("PFOS"), and alleged injuries associated with their exposure to PFAS through drinking water and other sources. *See* Complaint (Dkt. No. 1-1). On December 17, 2018, Plaintiffs filed the Complaint in the State of Wisconsin Circuit Court, Marinette County. On January 31, 2019, the case was removed to the Eastern District of Wisconsin, styled as *Campbell, et al., v. Tyco Fire Products LP, et al.,* No. 1:19-cv-00162-WCG (the "Action"). *See* Removal (Dkt. No. 1). On February 3, 2019, the Action was transferred to the United States District Court for the District of South Carolina, Charleston Division, and included in MDL No. 2873, *In Re: Aqueous Film Forming Foam Products Liability Litigation*. *See* Transfer Order (Dkt. No. 9).

In their Complaint, Plaintiffs allege that Defendant Tyco manufactured the Ansul brand of products, including Ansul brand aqueous film-foaming foam ("AFFF"). Plaintiffs allege that Tyco is the successor in interest to Ansul and that Tyco/Ansul designed, tested, manufactured, and sold AFFF used for research, development, and training at the Ansul Fire Technology Center ("FTC") in Marinette, Wisconsin. Further, Plaintiffs contend that Chemguard designed, manufactured, and

sold AFFF used for research, development, and training purposes at the FTC after being acquired by Tyco/Ansul in 2011. Plaintiffs allege that ChemDesign designed, manufactured and sold certain components of the AFFF that were used for research, development, and training purposes at the FTC.

Plaintiffs asserted claims for damages and equitable relief against the Defendants regarding the alleged release, discharge, and deposit of PFAS from the FTC, which Plaintiffs allege to have entered their and the putative class members' private drinking water wells and onto their respective properties. Defendants dispute these allegations and dispute that the Action could properly be certified as a class action.

## II.    SUMMARY OF THE PROPOSED SETTLEMENT TERMS

Defendants have already agreed to provide bottled water and/or point-of-entry treatment systems to homes within the area of the proposed class where private water wells have been allegedly impacted by PFAS from the FTC, and Defendants are working to connect such homes to a permanent supply of clean, safe drinking water, including through a municipal water line connection. The proposed Settlement encompasses the additional property damage, exposure, and personal injury claims of the current and former residents of those properties and is the product of extensive arms-length negotiations between the parties and their experienced and informed counsel. Considering the claims, the relief sought, and the parties' respective litigation risks, the Agreement is fair, reasonable, and adequate and certainly falls well within the "range of reasonableness" applicable at the preliminary approval stage. *See, e.g.*, *Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 U.S. Dist. LEXIS 26450, at * 21 (D.S.C. Feb. 14, 2019) ("The purpose of the preliminary approval is for the court to determine that the proposed settlement agreement is sufficiently within the range of reasonableness." (internal quotation marks omitted)).

The Agreement and the exhibits thereto provide all of the details of the Settlement terms. The following is a brief summary.

### A.    Settlement Eligibility

The Settlement establishes an administrative compensation system that defines the types of claims that are eligible for payment and the documentation required to support those claims. The Agreement sets forth a proposed Settlement Class, defined as:

> All Persons who currently reside or formerly resided in or currently own or formerly owned, (i) a property with a Private Well Drinking Water Source; (ii) within the Class Area; (iii) for at least one (1) year during the Class Period.

Agreement, § 3.1. The Class Area is an area within the Town of Peshtigo southeast of the FTC where PFAS from the FTC may have migrated into private wells. Because testing of AFFF at the FTC allegedly began around 1965, the Class Period is defined as the time between January 1, 1965 and December 31, 2020. Agreement, § 1. Under the Settlement, certain compensation is provided to address property damage and exposure-based claims of Class Members.

The Settlement also provides compensation for certain "Eligible Personal Injuries" set forth in Section 4.1(d) of the Agreement. Subject to meeting the Agreement's registration and eligibility requirements, Class Members with Eligible Personal Injuries have the option of seeking compensation for those injuries from a separate, non-class Qualified Settlement Fund. The Settlement will not, however, release latent or unknown personal injury/disease claims, including those arising from Eligible Personal Injuries, that are held by Class Members who neither opt out of nor participate in the Settlement.

### B.    Qualified Settlement Funds Under the Agreement

The Agreement creates two Qualified Settlement Funds totaling $17.5 million that will provide direct payments to Eligible Claimants. Agreement, § 4.1(a). Of the $17.5 million, one Qualified Settlement Fund of $15 million will cover the class claims: $11 million of that fund is

4

allocated for the alleged loss of value to real property within the Class Area and $4 million is allocated for alleged harms related to exposure to PFAS without current manifest disease. Agreement, § 4.1(b). The remaining $2.5 million is allocated to a separate, non-class Qualified Settlement Fund intended to address claims of select manifested disease, on an individual basis. Agreement, § 4.1(a). Under the Agreement, a Settlement Administrator approved by the Court has full and final authority to determine the amount paid to each Eligible Claimant from either Qualified Settlement Fund. The $17.5 million total settlement amount will also be used to fund administrative expenses and Class Counsel's fees and costs, as approved by the Court.

To be eligible for compensation from either Qualified Settlement Fund, Eligible Claimants must register and submit a Proof of Class Claim and/or Proof of Personal Injury Claim. Agreement, §§ 4.1(c), (e). Settlement Class Members will have the opportunity to register and submit claims. The proposed Class Notice, discussed herein, will provide Eligible Class Members with information about how to submit a claim and will advise them of their procedural rights regarding the Settlement.

### C. Process for Claims Submission

Class Members can participate in the Settlement and receive compensation from the Qualified Settlement Fund addressing property damage and exposure claims by, within forty-nine (49) days of the Effective Date of the Agreement, signing and returning a Proof of Class Claim and Release. Agreement, § 4.1(c). These forms will help streamline the process and ensure consistency across Class Members, and require Class Members to certify that: (1) they currently reside or formerly resided in or currently own or formerly owned a residential property in the Class Area for at least one year during the Class Period; and, if applicable, (2) they drank, cooked with, bathed in, or otherwise were exposed to water supplied from a Private Well Drinking Water Source. Agreement, § 4.1(c).

The parties anticipate that some Class Members may have one or more of five diagnosed diseases that the parties have agreed should be subject to compensation on an individual (non-class) basis. Eligible Personal Injuries under the Agreement are: (1) testicular cancer; (2) kidney cancer; (3) pregnancy-induced hypertension; (4) ulcerative colitis; or (5) thyroid disease. Agreement, § 4.1(d). As discussed in the previous section, the Release does not include latent or unknown personal injury/disease claims, including those arising from Eligible Personal Injuries, that are held by Class Members who neither opt out of nor participate in the Settlement.

Eligible Personal Injury Claimants can participate in the Settlement and apply for an award from the Personal Injury Qualified Settlement Fund by providing, within twenty-eight (28) days of the Effective Date, a sworn declaration in the form provided in Exhibit G-1 of the Agreement that certifies as truthful records sufficient to demonstrate that they: (1) currently reside or formerly resided in a residential property in the Class Area for at least one year prior during the Class Period; (2) drank, cooked with, bathed in, or otherwise were exposed to water supplied from a Private Well Drinking Water Source; and (3) were medically diagnosed with one or more of the Eligible Personal Injuries, with the initial diagnosis occurring more than one year after they first resided in or lived on a residential property in the Class Area. Agreement, § 4.1(e).

### D.    Role of the Settlement Administrator and Class Notice Administrator

Plaintiffs request that the Court appoint David R. Cohen as the Settlement Administrator. Under the Agreement, the Settlement Administrator shall have the authority to perform all actions consistent with the terms of the Agreement that the Settlement Administrator deems reasonably necessary. Agreement, § 7.1. The Agreement provides a process whereby the Settlement Administrator shall have full and final authority to determine the award amount from the class-related Qualified Settlement Fund to be paid to any Class Member. Agreement, § 4.1(b). The Settlement Administrator also shall make payments from the Personal Injury Qualified Settlement

Fund based on values the Settlement Administrator establishes for each Eligible Personal Injury. Agreement, § 4.1(f). All decisions by the Settlement Administrator concerning claims submitted by Eligible Claimants and Eligible Personal Injury Claimants are considered final, binding, and non-appealable. Agreement, § 4.2(d).

Plaintiffs further request that the Court appoint Matthew Garretson as the Class Notice Administrator. Under the Agreement, the Class Notice Administrator is responsible for developing and administering a plan to provide notice to potential Class Members using the proposed Class Notice attached to the Agreement as Exhibit C. Agreement, §§ 1, 3.3(d).

### E.    Payment of Attorneys' Fees and Expenses

The Total Settlement Amount shall be used, with the Court's approval, to pay all of Class Counsel's fees and costs, as awarded by the Court, including without limitation the fees, costs, and expenses of all Class Counsel's vendors, consultants, and experts for class-wide claims. Any such fees and expenses approved by the Court shall be subject to the "Common Benefit Holdback Assessment" set forth in Case Management Order No. 3, which requires a holdback assessment of 6% allotted for common benefit attorneys' fees and 3% allotted for reimbursement of permissible common benefit costs and expenses from any settlements. Under the Agreement, and subject to Court approval, the Parties have agreed that Class Counsel may apply to this Court for an award of attorneys' fees and expenses associated with their work in this Action, and such motion shall be filed no less than 20 days before objections to the Settlement are due. Agreement, § 4.6.

### F.    Release of Liability

In exchange for the relief described above, all named Plaintiffs and Class Members will provide a release. The full scope of the release, and its exact terms, is fully set forth in Sections 4.2 and 5 of the Agreement and Exhibits F and G-1.

### III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

In order to preliminarily approve the proposed Settlement, the Court must first determine whether it is likely to be able to certify the proposed Settlement Class at final approval. Fed. R. Civ. P. 23(e)(1)(B). It is well established that a "a potential settlement is a relevant consideration when considering class certification," *Robinson*, 2019 U.S. Dist. LEXIS 26450 at *9, and that a class may be certified for settlement purposes even where (as here) the defendants would contest certification if the issue were litigated on the merits. "If not a ground for certification *per se*, certainly settlement should be a factor, and an important factor, to be considered when determining certification." *Temp. Servs. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 199143, at *2 (D.S.C. July 31, 2012).

Even where settlement is involved, however, the proposed certification must still satisfy the requirements set forth in both Rule 23(a) and Rule 23(b)(3). Rule 23(a) empowers a court to certify a class action when (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class as a whole ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). In addition, Rule 23(b)(3) requires that the court find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that the class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As demonstrated below, the Settlement Class meets all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes, and therefore it is likely that the Court will be able to certify the proposed Settlement Class.

**A.     The Proposed Settlement Class Satisfies Rule 23(a)**

1.     <u>The Proposed Settlement Class Meets the Numerosity Requirement</u>

The parties estimate that there are over 300 homes falling within the Class Area, with an average of 3–4 people in each home. Thus, the number of eligible Class Members more than meets the numerosity requirement of Rule 23(a). This is especially true considering that the Settlement Class includes both current and former owners and/or occupants of residences within the Class Area over a period of almost 60 years. As such, there can be little serious debate that joinder is impractical. *See* A. Conte and H. Newberg, 1 *Newberg on Class Actions* § 3:5 (4th ed. 2002) ("Certainly, when the class is very large—for example, numbering in the hundreds—joinder will be impracticable . . . . In light of the prevailing precedent, the inherent difficulty in joining as few as 40 members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").

2.     <u>The Proposed Settlement Class Meets the Commonality Requirement</u>

The commonality requirement is also satisfied for purposes of the proposed Settlement Class because the claims of the Plaintiffs raise questions of law and fact common to each member of the proposed Class. Here, a single source, the FTC, is alleged to be responsible for the PFAS contamination in the Class Area. The Class Members each either lived in or owned property in that common area. And they each were allegedly exposed to PFAS from private drinking water well sources.

This Court has held that "[c]ommonality is satisfied if only one legal or factual issue is shared by all class members." *Temp. Servs. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 86474, at *5 (D.S.C. June 22, 2012). Further, these are precisely the types of questions that courts in this Circuit and others have found sufficient to satisfy the commonality requirement. *In re Mi Windows & Doors Prods. Liab. Litig*., No. 2:12-

mn-00001-DCN, 2015 U.S. Dist. LEXIS 184471, at *21–22 (D.S.C. July 22, 2015) ("In mass tort cases, common issues of law and fact have been held to predominate where the same evidence would resolve the question of liability for all class members." (internal quotation marks omitted)); *Collins v. Olin Corp.*, 248 F.R.D. 95, 101 (D. Conn. 2008) (finding commonality requirement was satisfied where plaintiffs "alleged common questions of fact pertaining to the course of conduct of [defendant] allegedly leading to the contamination of [plaintiffs'] properties"). Thus, the commonality requirement is met for purposes of certifying a Settlement Class.

### 3.     The Proposed Settlement Class Meets the Typicality Requirement

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires that the claims of the named class representative be typical of those of the class; a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Noel v. Hudd Distribution Servs*., 274 F.R.D. 187, 191 (D.S.C. 2011). Further, when analyzing typicality under Rule 23(a)(3), the Fourth Circuit has held that there must be a cognizable injury "held by the named plaintiffs 'similar to the injuries suffered by the other class members.'" *Id.* (citing *McClain v. South Carolina Nat'l Bank*, 105 F.3d 898, 903 (4th Cir. 1997)).

The Settlement Class Representatives' claims are typical of the Class they seek to represent because they arise from the same alleged types of exposure from the same alleged source as do the claims of the other members of the proposed Settlement Class. Further, the Settlement Class Representatives' alleged injuries collectively cover the three categories of injuries for which compensation is available under the Agreement. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied by the proposed Settlement Class.

4.    The Proposed Settlement Class Meets the Adequacy Requirement

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "This requirement is 'a two-pronged inquiry, requiring evaluation of: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether Plaintiffs' claims are sufficiently interrelated with and not antagonistic to the class claims as to ensure fair and adequate representation.'" *Moodie v. Kiawah Island Inn Co., LLC*, 309 F.R.D. 370, 378 (D.S.C. 2015) (citing *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000)).

These requirements are met here. The first prong concerns the qualifications, experience, and ability of Class Counsel to conduct the litigation. The attorneys from both of the law firms being proposed as Class Counsel are well-qualified to serve as Class Counsel here.

Napoli Shkolnik is currently class counsel in a number of cases throughout the country and has leadership roles in numerous multi-district litigations, including this one.

In addition to his appointment as Plaintiffs' Co-Lead Counsel in this litigation, Paul Napoli has been appointed Plaintiffs' Co-Lead Counsel in *In Re: FTCA Flint Water Cases* (Civil Action No. 17-cv-11218) by Honorable Linda V. Parker of the United States District Court for the Eastern District of Michigan; Plaintiffs' Liaison Counsel in the *West Virginia Opioid Litigation* (Civil Action No. 17-C-248) by Honorable David W. Hummel, Jr. of the Second Judicial Circuit Court, Division 2 of Marshall County, West Virginia; Liaison Counsel in the *Colorado PFOA / PFOS Toxic Tort Litigation (Bell, et al. v. The 3M Company, et al., No. 1:16-cv-02351-RBJ)* by Honorable R. Brooke Jackson of the United States District Court for the District of Colorado; Co-Lead Counsel in the *In Re New York Opioid Cost Recovery Litigation* by Justice Jerry Garguilo of the Supreme Court of the State of New York for Suffolk County; Appointed by the Supreme Court of the State of New York as a Liaison Counsel for the New York State Consolidated Diet Drug

11

litigations *In re: Diet Drug (Phentermine, fenfluramine, dexfenfluramine) Products Liability Litigation;* Plaintiffs' Discovery Committee for *In re: MTBE (Methyl Tertiary Butyl Ether) Products Liability Litigation (MDL-1358)*, United States District Court for the Southern District of New York (Judge Shira Scheindlin) on Environmental Contamination of Municipal Water Supplies of MTBE by Petroleum Refiners and Retailers; New York Court Appointed Member of the Plaintiff's Steering Committee for *In re Rezulin Products Liability Litigation*; Plaintiff's Co-Liaison Counsel for *In re: World Trade Center Disaster Site Litigation*, 21 MC 100 (AKH) settled in the U.S. District Court for the Southern District of New York by Judge Alvin K. Hellerstein. He is a nationally renowned mass tort and personal injury attorney with more than 28 years of experience handling environmental toxic tort cases, including those involving large-scale community drinking water contamination including from MTBE, PCE, TCE, Freon and other chemicals.

Mr. Napoli frequently lectures to others on issues involving AFFF and PFAS, and his speaking engagements include "A Cost Recovery Program: PFAS Water Contamination", American Water Works Association (AWWA) Webinar Series (October 22, 2020); Speaker, "PFAS Class Action Lawsuit", Rural Water Association of Utah: 2020 Annual Conference (February 27, 2020); Speaker, PFAS & Your Local Landfill: Managing Risk and Preparing for Regulations, New York State of Associations (NYSAC) (November 14, 2019); Speaker, "PFOAS and PFOS Contamination in NYS", New York State City/County Management Association (NYSCMA), (May 29, 2019); Panelist, "Avoiding Surprise: Unregulated Chemicals and Risk", Perrin Conferences, (May 14, 2019); Speaker, "PFAS Water Contamination", National Organization of Black County Officials (NOBCO), (May 1-4, 2019); Speaker, "PFOA – The Hot Documents", HarrisMartin's Water Contamination Litigation Conference, 2018; Faculty Member,

"Groundwater Contamination Litigation: Proving and Defending Against Liability: Demonstrating Nexus, Causation and Injury to Recover Damages", Strafford Webinars (June 5, 2018). In addition, Mr Napoli has published a number of articles on the issues, including Statute of Limitations in Toxic Tort Cases: CPLR 214-f and Beyond, New York Law Journal (January 9, 2019); Litigation Combats Hazards of Aqueous Film-Forming Foam Products, American Water Works Association (AWWA) Opflow Magazine (August 2019); PFAS: A New Frontier for Waste Management and Landfill Leachate, New York State Association for Solid Waste Management (NYSASWM) (Volume 24 | Number 2 | Summer 2019); The Emerging Crisis of PFAS Exposure, The New York Law Journal (October 6, 2017); "The Cost of Contamination," American Water Works Association Journal, What's New in Water and Waste Water, November 2012; among others.

Hunter Shkolnik was appointed Co-Liaison Counsel in *In Re: Flint Water Crisis*, No. 16-cv-10444 (E.D. Mich.). Additionally, Mr. Shkolnik was appointed Co-Lead Counsel in *In Re: Daily Fantasy Sports Litigation*, and served as either Lead Counsel or Plaintiff Steering Committee member in: *In Re: New York Diet Drug/Phen Fen Litigation*; *In Re: New York Sulzer Inter Op Hip and Knee Implant Litigation*; *Sterling, et al. v. Stratfor Enterprises, LLC, et al.* (consumer class action); *Hernandez-Ortiz, et al. v. 2 Gold, L.L.C., et al.*; and *Carolyn Roberts, Alexander Wood and Mayer & Lee, P.C. v. Ocean Prime, LLC*. Mr. Shkolnik has been appointed to leadership positions in more than 25 MDLs and consolidated, complex proceedings in federal and state courts across the country, including *In Re: PepsiCo. Inc., Bottled Water Marketing and Sales Practices Litigation*, MDL No. 1903; *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2151; *In Re: Kaba Simplex Push Button Lock Sales and Marketing Litigation* (appointed co-lead counsel), MDL No. 2220; *In Re: Nuvaring*

*Products Liability Litigation*, MDL No. 1964; and *In Re: Bayer Healthcare LLC and Merial Limited Flea Control Marketing and Sales Practices Litigation*, MDL No. 2319.

Robert A. Bilott is a partner with Taft Stettinius & Hollister LLP where he has been practicing in the areas of complex litigation, class actions, mass torts, and environmental law for over 30 years. Mr. Bilott spent more than two decades of his career representing parties injured by PFAS contamination, leading to his appointment by this Court as Advisory Counsel to the Plaintiffs' Executive Committee in *In Re: Aqueous Film-Forming Foams Products Liability Litigation* (MDL No. 2:18-mn-2873-RMG). Beginning in 1999, Mr. Bilott served as one of the lead counsel representing individual plaintiffs in the first case filed in any State or Federal Court involving claims arising from exposures to PFAS, *Wilbur E. Tennant, et al. vs. E. I. du Pont de Nemours & Co., Inc.* (Case No. CA-6:99-0488 (S.D. W.Va.)), which led to the first disclosures of any PFAS water contamination issues to the public, regulatory authorities, and the scientific community. In 2002, Mr. Bilott was among the counsel team certified as class counsel for Plaintiffs in the first case in the country to be certified to proceed as a class action on behalf of tens of thousands of individuals bringing claims based on exposures to PFAS, *Jack W. Leach, et al. vs. E. I. du Pont de Nemours and Company*, Civil Action No. 01-C-608 (Cir. Ct. Wood Cty., WV). Mr. Bilott helped negotiate and implement an innovative class-wide settlement in the *Leach* litigation in 2004, leading to Mr. Bilott being part of the team receiving the 2005 "Trial Lawyer Of The Year" award from the Trial Lawyers For Public Justice Foundation. During 2005-2010, Mr. Bilott served as lead counsel in a number of counsel teams representing plaintiffs in several additional cases against PFAS manufacturers in New Jersey, West Virginia, Ohio, Alabama, and Minnesota, representing thousands of individuals injured by PFAS exposures, including serving as court-

appointed class counsel in *Rowe/Scott, et al. v. E. I. du Pont de Nemours and Company*, Civil Action No. 06-1810 (D.N.J), which was settled in 2011.

Since 2013, Mr. Bilott has served as Co-Lead Counsel for thousands of *Leach* class members asserting personal injury and/or wrongful death claims arising from PFAS exposures in multidistrict litigation styled, *In re: E. I. du Pont de Nemours & Company C-8 Personal Injury Litigation*, Case No. 2:13-md-2433 (S.D. Ohio), and served on the trial teams for plaintiffs in each of the multi-week bellwether trials that were held in that MDL (with trial verdicts in favor of each such plaintiff), which resulted in a global settlement in 2017 of $670.7 million for the over 3500 plaintiffs with claims pending at the time. In 2017, Mr. Bilott was awarded the international Right Livelihood Award, also known as "the Alternative Nobel Prize," for his decades of work on behalf of those adversely impacted by PFAS chemicals. Mr. Bilott also has received numerous other awards and recognitions for his legal work on PFAS issues, which are listed and summarized on his law firm's website linked here: https://www.taftlaw.com/people/robert-a-bilott.

Mr. Bilott's legal work on behalf of parties injured by PFAS contamination also has been the subject of a feature-length documentary, "The Devil We Know," and a major motion picture, "Dark Waters." Mr. Bilott is frequently invited to speak at law schools, universities, and colleges on PFAS issues, and has spoken before various community groups and governmental, scientific, and legal organizations across the county and internationally on PFAS issues, including presentations, briefings, and/or testimony before various committees and representatives of the US Congress, the European Union, the Parliament of the United Kingdom, the United Nations, and various State Legislatures, from Alaska to New York.

The second prong is also met here because the Settlement Class Representatives share common interests with the other members of the Class they seek to represent: They live in the

same defined area as the other Class Members and allege that they were exposed to PFAS in their drinking water from the same source as other Class Members. Further, they have every incentive to achieve a recovery that would benefit the entire Class because their alleged injuries collectively fall within each of the three categories for which compensation is available under the Agreement. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes." (citation omitted)).

**B.    The Proposed Settlement Class Satisfies Rule 23(b)(3)**

In addition to satisfying Rule 23(a), the putative Settlement Class must fall within at least one of the three subsections of Rule 23(b). Here, for purposes of a settlement, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "[1] questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . [2] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Brown v. Charles Schwab & Co.*, No. 2:07-CV-03852-DCN, 2009 U.S. Dist. LEXIS 114840, at *25 (D.S.C. Dec. 9, 2009).

1.    Common Questions of Law and Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance test is "readily met" in class actions. *Id*. at 625. As noted above, this matter presents several fundamental common questions of fact or law. The predominance inquiry focuses on the balance between individual and common issues. *Brown v. Nucor Corp.*, 785 F.3d 895, 917–21 (4th Cir. 2015). Common issues of law and fact predominate "where the same evidence would resolve the question of liability for all class members." *Beaulieu v. EQ Indus.*

16

*Servs., Inc*., No. 06 Civ. 400, 2009 WL 2208131, at *20 (E.D.N.C. July 22, 2009); *see Stillmock v. Weis Mkts*., 385 F. App'x 267, 273 (4th Cir. 2010); *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 428 (4th Cir. 2003). The need for individualized determination of the amount of compensatory damages suffered by putative class members will not alone defeat certification. *Gunnells*, 348 F.3d at 429 (collecting cases). "In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations." *Id*. at 428 (citing the Advisory Committee's note (1966), amend. subdiv. (c)(4)).

Here, for settlement purposes, Plaintiffs' common contention—that PFAS from the FTC migrated into drinking well water sources for each Class Member in a common area—suffices to establish predominance over any issues affecting only individual Class Members. Accordingly, class treatment is appropriate here for purposes of certifying a Settlement Class.

2.     <u>A Class Settlement Is Superior to Other Methods for the Proposed Class.</u>

The factors to be considered in determining the superiority of proceeding as a class action include: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3). However, when "confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *In re Oil Spill by Oil rig Deepwater Horizon*, 910 F. Supp. 2d 891, 911 (E.D. La. 2012) (internal citation omitted).

These factors favor certifying the Settlement Class here.

## IV.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

Preliminary approval of a class action settlement is appropriate when "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys and appears to fall within the range of possible approval." *Temp. Servs.*, 2012 U.S. Dist. LEXIS 86474 at \*16-17 (citing MANUAL FOR COMPLEX LITIG. § 30.41 (West 2008)); *see also* William B. Rubenstein, 4 *Newberg on Class Actions* § 13:10 (5th ed. 2020) ("[D]istrict courts have developed a jurisprudence whereby they undertake *some* review of the settlement at preliminary approval, but perhaps just enough to ensure that sending notice to the class is not a complete waste time."). This is consistent with the "strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation." *Robinson*, 2019 U.S. Dist. LEXIS 26450, at \*21. Further, where a class settlement is at issue, there is a "strong presumption in favor of finding a settlement fair." *DeWitt v. Darlington Cnty.*, No. 4:11-cv-00740-RBH, 2013 U.S. Dist. LEXIS 172624, at \*11 (D.S.C. Dec. 6, 2013); *see also South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) ("In assessing the fairness and adequacy of a proposed settlement, there is a strong initial presumption that the compromise is fair and reasonable.").

The 2018 amendments to Rule 23 have codified the preliminary approval process. First, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice "is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The 2018 amendments to Rule 23(e) set forth a list of factors for a court to consider before approving a proposed settlement as "fair, reasonable, and adequate." The factors are whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Advisory Committee Notes to Rule 23 acknowledge these judicially created standards, explaining that the newly enumerated Rule 23(e) factors are "core concerns" in every settlement and were not intended to displace a court's consideration of other relevant factors in a particular case. Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Accordingly, the parties will address the "fair, reasonable, and adequate" factors under Rule 23(e)(2) and the Fourth Circuit's and this Court's prior preliminary approval decisions.

At the preliminary approval stage, "the purpose of the preliminary approval is for the court to determine that the proposed settlement agreement is 'sufficiently within the range of reasonableness.'" *Robinson*, 2019 U.S. Dist. LEXIS 26450 at *21 (citing *In re Outer Banks Power Outage Litig.*, No. 17 Civ. 141, 2018 U.S. Dist. LEXIS 73795, 2018 WL 2050141, at *3 (E.D.N.C. May 2, 2018)). The Court is not required at the preliminary approval stage to determine whether it will grant final approval of the proposed settlement, only that it is likely that it would. Here, initial consideration of the final approval factors supports preliminary approval of the Settlement.

**A.      The Class Has Been Adequately Represented and the Proposed Settlement Was Negotiated at Arm's-Length**

The first two factors of Rule 23(e)(2)—adequate representation by the class representative and class counsel and whether the settlement was a product of arm's-length negotiations—are procedural and focus on the history and conduct of the litigation and settlement negotiations. Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Relevant considerations may include the experience and expertise of plaintiffs' counsel; the information available to counsel negotiating the settlement; the stage of the litigation and amount of discovery taken; the pendency of other litigation concerning the subject matter; the length of the negotiations; whether a mediator or other neutral facilitator was used; the manner of negotiation; whether attorneys' fees were negotiated with the defendant and, if so, how they were negotiated and their amount; and other factors that may demonstrate the fairness of the negotiations. *Id.*

Proposed Class Counsel have adequately represented the putative Settlement Class. Proposed Class Counsel have litigated this case as part of the overall MDL for over two years and include the Advisory Counsel and one of the court-appointed Co-Lead Counsel for all Plaintiffs in the MDL. They have worked diligently to litigate the proposed Class's claims while simultaneously seeking relief through settlement negotiations.

The  Agreement is the result of extensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. The Settlement terms in this case are the product of significant give and take by the Parties and were negotiated at arm's-length.

Proposed Class Counsel have represented plaintiffs in numerous class actions and mass tort cases and have worked diligently to negotiate a settlement allocation that is fair to the Class. Further, the Settlement Class Representatives "have common interests with unnamed members of

the class," and have "vigorously prosecute[d] the interests of the class through qualified counsel." *Runion v. U.S. Shelter*, 98 F.R.D. 313, 317 (D.S.C. 1983) (internal citation omitted).

Finally, significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the proposed Class. In this case, Class Counsel have litigated numerous class actions in state and federal courts and are well-qualified to assess the strengths and weaknesses of Plaintiffs' positions. Class Counsel fully support the Settlement.

## B.    The Relief Provided by the Proposed Settlement Is More than Adequate

The relief provided to the Settlement Class consists of a cash payment by the Defendants of $17.5 million, which will be distributed net of fees and expenses. Class Counsel believe that this payment includes adequate relief for the Settlement Class. It is estimated that there are about 300 residential properties in the Class Area, though it is estimated that fewer than 50 have been sold in the last several years as public awareness of PFAS contamination in some private wells in the Town of Peshtigo has increased. In addition, more than half of the homes in the Class Area have already had their wells tested for PFAS, with varying results—some have had some level of PFAS detected, while most have had no PFAS levels detected. Taking into account all the various factors, including the risk of litigation, the Total Settlement Amount is fair and adequate.

Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Consideration of the relevant factors under Rule 23 in this limited context counsels in favor of preliminary approval of the Settlement.

## C.    The Proposed Settlement Is Reasonable Considering the Risks and Costs of Continued Litigation

The Court should assess adequacy of relief to the class "taking into account the uncertainty and risks involved in litigation and in light of the strength of the claims and possible defenses." *In*

*re Mi Windows*, 2015 U.S. Dist. LEXIS 184471 at *38 (citations omitted). This is particularly true for class actions, which are inherently complex. William B. Rubenstein, 4 *Newberg on Class Actions* § 13:44 (5th ed. 2020). These risks must be weighed against the settlement consideration: here the certainty of a cash settlement of more than $15 million, net of fees and expenses.

Class Counsel believe that the Settlement is an excellent result, particularly when weighed against the time and costs of continued litigation. Plaintiffs are optimistic about the likelihood of ultimate success in this case, but success is not certain. Defendants are represented by experienced counsel and undoubtedly would continue to contest liability, oppose class certification, and appeal any contrary result. Weighing the Settlement's benefits against the risks and costs of continued litigation supports approval. *See In re Mi Windows*, 2015 U.S. Dist. LEXIS 184471 at *38.

Although Class Counsel are confident in the strength of Plaintiffs' case, they are also pragmatic in acknowledging the various defenses claimed by the Defendant and the risks inherent in trial and post-judgment appeal. The success of Plaintiffs' claims turns on questions that would arise at class certification, summary judgment, trial, and during an inevitable post-judgment appeal. Further, Defendants would dispute whether Plaintiffs could satisfy the requirements needed to certify a class for resolution of the asserted claims at trial. Under the circumstances, Class Counsel appropriately determined that the Settlement outweighs the risks of continued litigation.

Even if the Plaintiffs and the proposed Settlement Classes prevailed on liability issues at trial, they would still face obstacles in proving both the fact and amount of damages. Furthermore, any recovery could be delayed for years by an appeal. This Settlement provides substantial relief to the Plaintiffs and the Settlement Class Members, without further delay.

### D. The Proposed Settlement Provides a Reasonable Framework for Determining Fees and Costs

The Court has the ultimate authority to determine what, if any, attorneys' fees should be awarded to Class Counsel. *See* Fed. R. Civ. P. 23(h). Pursuant to the schedule set forth in the proposed order, Class Counsel will file a motion for attorneys' fees for the Court to consider in making that determination. Consistent with the process for requesting attorneys' fees in class cases, the motion for attorneys' fees will be filed no less than 20 days before objections to the Settlement are due, which is forty-nine (49) days after the Preliminary Approval Order. Agreement, § 3.4. As mentioned earlier, any fees and expenses awarded under the Agreement shall be subject to the "Common Benefit Holdback Assessment" set forth in Case Management Order No. 3, which requires a holdback assessment of 6% allotted for common benefit attorneys' fees and 3% allotted for reimbursement of permissible common benefit costs and expenses from any settlements.

### E. The Proposed Settlement Is Consistent with the Public Interest

"In the class action context in particular, 'there is an overriding public interest in favor of settlement.' Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources." *South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (quoting *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980)). Moreover, the public interest is best served in this case by providing relief to members of the relevant community as expeditiously as possible. Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed Settlement, particularly at this preliminary phase. Thus, this factor also supports approval.

## V.      THE PROPOSED SETTLEMENT'S ALLOCATION PLAN AND CLAIM FORM ARE APPROPRIATE

The Agreement fairly and reasonably provides compensation to Class Members using an appropriate and robust notice and application process. Experienced counsel for Plaintiffs and Defendants extensively negotiated at arm's-length the terms of the Agreement, including the amount allocated to each Qualified Settlement Fund and how, once eligibility is determined, Class Members will receive monetary payments based on, among other things, the extent of PFAS in each Class Member's private well.

As detailed above, the Agreement creates two (2) separate Qualified Settlement Funds: the Class Qualified Settlement Fund (Agreement, § 4.1(d)) and the Personal Injury Qualified Settlement Fund (Agreement, § 4.1(b)). The Qualified Settlement Funds will be administered by an experienced Settlement Administrator approved by the Court, who shall have full and final authority to determine the amount from such Fund to be paid to any Class Member or Eligible Personal Injury Claimant. Agreement, § 4.1(b).

As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. For example, in *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, the court granted preliminary approval of settlements which compensated for personal and bodily injury claims of certain individuals related to their exposure to oil and/or chemical dispersant where the level of compensation was determined by a "Specified Physical Conditions Matrix." Preliminary Approval Order, No. 2:10-md-02179-CJB-DPB (E.D. La. May 2, 2012), ECF No. 6418; Preliminary Approval Order at 6, No. 2:10-md-02179-CJB-DPB (E.D. La. May 2, 2012), ECF No. 6419; *see In re Deepwater Horizon*, 910 F. Supp. 2d at 957

("[T]here is nothing improper in the parties' negotiation of claims frameworks that compensate class members in light of the strength of their claims."), *aff'd*, 739 F.3d 790 (5th Cir. 2014).[2]

This Agreement gives the Settlement Administrator ("SA") the discretion necessary to confirm, adjust, and implement the allocation of the Qualified Settlement Funds based on the information obtained during the claim application process that is part of the Notice Plan included in the Agreement. Once the SA has this necessary information, he will be able to distribute the net Qualified Settlement Funds to Eligible Claimants who submit a timely Proof of Class Claim and Release. This form, as well as other pertinent information about the Settlement, will be provided to Class Members and will be available on the Settlement website and upon request.[3] Agreement, Ex. C. This carefully crafted plan of allocation reflects: (1) Class Counsel's reasonable judgment about the relative value of the different types of claims being settled; (2) a desire for an efficient and fair claims process; and (3) the arm's-length negotiations between the Parties. As such, the plan is within the range of reasonableness necessary for preliminary approval as being fair, reasonable, and adequate, and in the best interests of all eligible Class Members.[4]

Lastly, the Agreement will not affect the bottled water and/or Point of Entry Treatment systems Defendants have offered or been providing to residents in the Class Area and will not affect the ability of eligible households to be connected to a municipal water line or other

---

[2] *See also, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 589 (N.D. Ill. 2011) ("[W]hen real and cognizable differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement in favor of plaintiffs whose claims comprise the set that was more likely to succeed." (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)); *In re Mi Windows*, 2015 U.S. Dist. LEXIS 184471 at *26 (property damage Class met the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3)).

[3] The website will be established, by Class Counsel and the Claims Administrator, following entry of a Preliminary Approval Order. Agreement, § 3.1.

[4] If there were no class component to the Settlement, approval of the allocation plan would not be required at this stage.

25

permanent drinking water remediation measure, which Defendants are separately providing in cooperation with the Wisconsin Department of Natural Resources and the local municipalities.

## VI.    THE COURT SHOULD APPROVE THE NOTICE PLAN AND AUTHORIZE CLASS COUNSEL TO DISSEMINATE NOTICE

The 2018 amendments to Rule 23 provide that, "upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)," a court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). In addition, the notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). The proposed Class Notice attached to the Agreement as Exhibit C meets these requirements.

The Notice program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Agreement; a date by which Class Members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date of the Final Approval Hearing; and information regarding the website where Settlement Class

Members may access the Agreement and other important documents. Class Counsel will also make available to Class Members a chart providing preliminary estimates of the compensation that Class Members would likely receive, net of the anticipated attorneys' fees and costs proposed by Class Counsel, assuming all potential Class Members opted into the Settlement.

The Settlement Notice clearly and concisely summarizes the Settlement, including Class and non-Class aspects of the Settlement, the available benefits, the actions that potential Eligible Participants must take to participate in the Settlement, and the relevant deadlines. *See generally* Agreement, Ex. C. It lays out the Class definition and explains that Class Members may request exclusion from the Settlement or may enter an appearance through counsel. *Id.* at ¶ 10. Likewise, the Notice describes other procedural rights available to members of the Settlement Class and other Eligible Participants. *Id.* at ¶¶ 13, 14, and 19. (explaining opt out and objection provisions). The Notice also directs recipients to a website that will be created to will be dedicated specifically to the Settlement where they can access additional information. *Id.* at ¶ 2.

The proposed Claims Notice Plan is straightforward, easy to understand for Settlement Class Members, and designed so they can easily claim the benefits to any of the applicable Funds. Settlement Class Members will make a claim by submitting a valid Claim Form to the Class Notice Administrator, which will be evaluated for timeliness and completeness. Claim Forms may be sent in by hard copy or submitted electronically on the website.

Class Members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Court's Clerk, Class Counsel, and Defendants' Counsel at the addresses designated in the proposed Class Notice. Settlement Class Members who timely opt-out of the Settlement will preserve their rights to individually pursue any claims they may have, subject to any defenses that Defendants may have against those claims, including but

not limited to statute of limitation defenses. The Agreement details the requirements to properly opt-out of the Settlement Class. A Settlement Class Member must opt-out of the Settlement Class by the Opt-Out Deadline, which will be set at a later date.

Settlement Class Members who wish to file an objection to the Settlement must do so no later than the Opt-Out Deadline. Pending Court approval, for an objection to be considered by the Court, it must include: (i) the Class Member's name, address, and telephone number; (ii) the factual basis for the claim of class membership, including whether the objector is a current or former resident of a property in the Class Area, and for what period of time during the Class Period; (iii) whether the Class Member plans to appear at the Fairness Hearing; and (iv) the complete factual basis for the objection, along with whatever legal authority, if any, the objector asserts regarding the objection. Agreement, § 3.4. If a Class Member files an objection to the Settlement that the Court denies, the Class Member will have an additional period of time to opt out of the Settlement. Agreement, § 3.5.

As recited in the Agreement and above, the proposed Class Notice will inform Settlement Class Members of the substantive terms of the Settlement. It will advise Class Members of their options for remaining part of the Settlement Class, for objecting to the Settlement, Class Counsel's attorneys' fee application, for opting-out of the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of Settlement Class Members and exceeds the requirements of Constitutional Due Process. Therefore, the Court should approve the Class Notice and the form and content of the claim forms.

## VII.    THE COURT SHOULD APPOINT DAVID R. COHEN, ESQ. AS SETTLEMENT ADMINISTRATOR AND MATTHEW GARRETSON, ESQ. AS CLASS NOTICE ADMINISTRATOR

Plaintiffs request that the Court approve the engagement of David R. Cohen, Esq. as Settlement Administrator (the "Settlement Administrator") and Matt Garretson, Esq. as Class

28

Notice Administrator (the "Class Notice Administrator"). The Settlement Administrator's address is 24400 Chagrin Boulevard, Suite 300 Cleveland, Ohio 44122 and the Class Notice Administrator's address is P.O. Box 2306 Park City UT 84060. The Settlement Administrator and Class Notice Administrator both submit personally to the jurisdiction of this Court and copies of their respective qualifications are attached as exhibits to this motion. *See* Aff. of David R. Cohen, Esq., attached as Ex. 2; Aff. of Matthew Garretson, Esq., attached as Ex. 3.

Mr. Cohen has previously been appointed to serve as a special master in numerous multi-district and class action litigations, including: *In re National Prescription Opiate Litigation* (MDL No. 2804) and *In re Oral Sodium Phosphate Products Liability Litigation* (MDL No. 2066) by the Honorable Dan A. Polster of the United States District Court for the Northern District of Ohio; *In re Polyurethan Foam Antitrust Litigation* (MDL No. 2196) by the Honorable Jack Zouhary of the United States District Court for the Northern District of Ohio; *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation* (MDL No. 2001) by the Honorable Christopher A. Boyko of the United States District Court for the Northern District of Ohio; *In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation* (MDL No. 1674), *Bland v. PNC Bank, N.A.* (No. 15-cv-1042), *Reinig v. RBS Citizens, N.A.* (No. 15-cv-1541), *Stewart v. Anchor Drilling Fluids, USA, Inc.* (No. 16-cv-1372), *Williford v. Rice Energy, Inc.* (No. 17-cv-945), and *Woloszyn v. Patriot Drilling Fluids* (No. 17-cv-1076)  by the Honorable Arthur J. Schwab of the United States District Court for the Western District of Pennsylvania; *In re Welding Fumes Products Liability Litigation* (MDL No. 1535) and *In re Sulzer Orthopedics Inc. Hip Prosthesis and Knee Prosthesis Liability Litigation* (MDL No. 1401) by the Honorable Kathleen M. O'Malley

of the United States District Court for the Northern District of Ohio[5]; *Murphy v. Gospel for Asia, Inc.* (No. 17-cv-1535) by the Honorable Timothy L. Brooks of the United States District Court for the Western District of Arkansas; *Sibley v. Sprint Nextel Corp.* (No. 08-cv-2063) by the Honorable Kathryn Vratil of the United States District Court for the District of Kansas; *In re Sears Front-Load Washer Prod. Liab. Litig.* (No. 06-cv-7023) by the Honorable Mary Rowland of the United States District Court for the Northern District of Illinois; *Massachusetts v. E\*Trade Access, Inc.* (No. 03-cv-11206) by the Honorable Nathaniel Gorton of the United States District Court for the District of Massachusetts; *Howe v. City of Akron* (No. 06-cv-2779) by the Honorable Sara Lioi of the United States District Court for the Northern District of Ohio.

Mr. Cohen is a past president and current member of the Board of Directors for the Academy of Court Appointed Masters ("ACAM"), an organization for which he was a Charter Member. Mr. Cohen also served as an editor and contributor for the 2013 edition of the ACAM publication *Appointing Special Masters and Other Judicial Adjuncts: A Benchbook for Judges and Lawyers*. In addition, he is a contributor to the *Class Action Settlement Guidelines and Best Practices* treatise published by the Duke Law School Center for Judicial Studies. Since 2008, Mr. Cohen has served as a Core Member for The Sedona Conference's Work Group on Mass Torts and Punitive Damages.  Through these various activities, Mr. Cohen has gained extensive experience designing and administering claims processes for the distribution of class settlement funds, as well as creating protocols and entering common benefit attorney fee awards.

Mr. Garretson has previously been appointed to serve as a special master or administrator of settlement funds and crisis response programs in cases throughout the country, including: *In re*

---

[5] Judge O'Malley has since been elevated to serve as a United States Circuit Judge for the United States Court of Appels for the Federal Circuit.

*Equifax Inc. Customer Data Security Breach Litigation* (MDL No. 2800) by the Honorable Thomas W. Thrash of the United States District Court for the Northern District of Georgia; *In re World Trade Center Disaster Site Litigation* (Nos. 21-MC-100, 21-MC-102 , 21-MC-103) by the Honorable Alvin K. Hellerstein of United States District Court for the Southern District of New York; *In re Oil Spill by Oil Rig Deepwater Horizon Litigation* (MDL No. 2179) by the Honorable Carl J. Barbier of the United States District Court for the Eastern District Louisiana; and *In re National Football League Players' Concussion Injury Litigation* (MDL No. 2323) by the Honorable Anita B. Brody of the United States District Court for the Eastern District of Pennsylvania. In this capacity, Mr. Garretson has substantial firsthand experience with the design, oversight and/or administration of hundreds of class action and mass tort resolution programs. Mr. Garretson provides detailed design, coordination and oversight of complex operations in settlements to achieve controlled, predictable outcomes (e.g. notice/outreach, predictive claim progression, claim valuation methodology, settlement program integration and disbursement controls).

## VIII.   PROPOSED SCHEDULE OF EVENTS

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the Final Approval Hearing or the date on which the Preliminary Oder is entered. The proposed schedule is attached hereto as Exhibit 4.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order:

(i)     Conditionally certifying the Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

(ii)    Preliminarily approving the terms and conditions of the Settlement embodied in the Agreement subject to the Fairness Hearing and final approval by the Court in the Final Approval Order;

(iii)   Finding that the Notice Plan described in Exhibit C and the Class Notice in the form of Exhibit C to the Agreement fairly and adequately describe the terms and effect of the Agreement and the Settlement; give notice of Class Members' right to opt out of the Settlement; describe how Class Members may object to approval of the Settlement; give notice of the time and place of the Fairness Hearing for final approval of the Settlement; and satisfy the requirements of Fed. R. Civ. P. 23(e), due process, and Fourth Circuit law regarding notice to Class Members of the Settlement;

(iv)    Appointing and designating Class Counsel as the counsel for the Settlement Class under Fed. R. Civ. P. 23(g).

(v)     Appointing and designating Plaintiffs as the representatives for the Settlement Class;

(vi)    Preliminarily approving the plan of distribution of Settlement proceeds to Class Members;

(vii)   Appointing and designating David R. Cohen, Esq. as Settlement Administrator and Matthew Garretson, Esq. as Class Notice Administrator; and

(viii)  For such other and further relief the Court deems just and proper.

Dated: January 7, 2021

/s/ Joseph G. Petrosinelli
Joseph G. Petrosinelli, Esq.
Liam J. Montgomery, Esq.
Williams & Connolly, LLP
725 12th Street, N.W.
Washington, DC  20005
(202) 434-5000
jpetrosinelli@wc.com
lmontgomery@wc.com

*Counsel for Defendants Tyco Fire*
*Products L.P. and Chemguard, Inc.*


/s/ J. Hayes Ryan
J. Hayes Ryan, Esq.
Jonathan B. Blakley, Esq.
Gordon Rees Scully Mansukhani, LLP
1 N. Franklin Street, Ste. 800
Chicago, IL 60606
(312) 619-4915
jblakley@grsm.com

*Counsel for Defendant ChemDesign*
*Products, Inc.*

/s/ Paul J. Napoli
Paul J. Napoli, Esq.
Hunter Shkolnik, Esq.
Napoli Shkolnik PLLC
270 Munoz Rivera Ave, Ste 201
Hato Rey, PR 00918
(787) 493-5088
PNapoli@NSPRLaw.com
Hunter@NSPRlaw.com

Robert A. Bilott, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202-3957
(513) 381-2838
bilott@taftlaw.com

*Counsel for Plaintiffs*

33

**CERTIFICATE OF SERVICE**

I hereby certify that on January 7, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

Dated: January 7, 2021

_____/s/ Patrick J. Lanciotti_____