# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No.  2:18-mn-2873-RMG **This Document relates to** *Campbell v. Tyco Fire Products LP et al.*, No. 2:19-cv-00422-RMG |

## <u>FIRST AMENDED CLASS SETTLEMENT AND RELEASE AGREEMENT</u>

THIS FIRST AMENDED CLASS SETTLEMENT AGREEMENT ("Agreement") is entered into as of the 6th day of January, 2021, by and among Tyco Fire Products LP; Chemguard, Inc.; and ChemDesign Products, Inc. (collectively "Defendants"), and Plaintiffs Joan Campbell and Richard Campbell (collectively "Plaintiffs" or, interchangeably, the "Class Representatives"), on behalf of themselves and the Class Members,[1] acting by and through Class Counsel.  Plaintiffs and Defendants are collectively the "Parties," and any one of them is a "Party."

## RECITALS

WHEREAS, Plaintiffs currently live on a property within the Class Area with a Private Well Drinking Water Source;

WHEREAS, Plaintiffs have asserted claims against Defendants in the Action;

WHEREAS, Plaintiffs allege in substance that PFAS from AFFF manufactured and used at the FTC have entered groundwater and have thereby contaminated the water that Plaintiffs and the Class Members draw from their Private Well Drinking Water Sources;

---

[1]  Unless defined elsewhere in this Agreement, capitalized terms have the meaning specified in Section 1.

WHEREAS, Plaintiffs contend, on behalf of themselves and the Class Members, that they have suffered various forms of injury and damage due to contamination of their Private Well Drinking Water Sources with PFAS;

WHEREAS, Defendants have denied and continue to deny any wrongdoing in connection with the operation of the FTC; with the manufacture of AFFF, or any component thereof; and with the use of AFFF at the FTC, and specifically deny and dispute the scientific, factual, legal, and other bases asserted in support of Plaintiffs' claims;

WHEREAS, after carefully considering the facts and applicable law, and the risks and uncertainty of continued litigation, and as a result of having engaged in extensive negotiations, the Parties desire to settle the claims in the Action on the terms and conditions stated herein, which the Plaintiffs and Class Counsel believe are fair, reasonable, adequate, and beneficial to and in the best interests of the Class Members;

WHEREAS, the Parties agree that this settlement agreement will not affect the bottled water and/or Point of Entry Treatment system Tyco has offered or been providing to residents in the Class Area (as defined below) and will not affect the ability of eligible households to be connected to a municipal water line or other permanent drinking water remediation measure, which Tyco is separately providing in cooperation with the Wisconsin Department of Natural Resources.

WHEREAS, the Parties agree that by entering into this Settlement, no Defendant is admitting any liability, fault, or violation of law, but that Defendants deny all allegations and claims asserted against them; and

WHEREAS, in consideration of the promises and the mutual covenants hereinafter set forth, the Parties, acting by and through counsel, have entered into this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each Party hereto, IT IS HEREBY AGREED by the Parties, subject to Court approval, as follows:

## SECTION 1: DEFINITIONS

For purposes of this Agreement, the following terms shall have the meanings set forth below:

**"Action"** means the above-captioned class action lawsuit, originally filed in Circuit Court for Marinette County, Wisconsin, removed to the United State District Court for the Eastern District of Wisconsin, and transferred to and currently pending in MDL No. 2873 in the United States District Court for the District of South Carolina.

**"AFFF"** means aqueous film-forming foam.

**"Agreement"** means this Class Settlement Agreement, including all Exhibits.

**"Class Claims"** means the Released Claims, which do not include latent or unknown personal injury/disease claims, including those arising from Eligible Personal Injuries, that are held by Class Members who neither opt out of nor participate in the Settlement.

**"Claims Administration"** means the work of (a) providing information about this Agreement to Class Members, including without limitation, mailing notices required under the terms of this Agreement or any court order, and responding to any inquiries from Class Members; (b) establishing, managing, reporting on, receiving the Total Settlement Amount and other funds into, and paying the Total Settlement Amount and other funds out of, an appropriate account or accounts exclusively dedicated to holding funds paid by Defendants under this Agreement that does not commingle funds from other sources; and (c) soliciting, answering inquiries about, reviewing, evaluating, deciding, granting, denying, calculating, paying, and reporting on claims,

requests, or orders for payment from the Total Settlement Amount and other funds held in the same account(s).

"**Class Area**" means the land within the area bounded in the north by University Drive, in the south by Heath Lane, in the west by Roosevelt Road and in the east by the Bay of Green Bay, all in the Town of Peshtigo, Wisconsin and as depicted for the convenience of the parties and the Court in the attached Exhibit A.

"**Class Counsel**" means those lawyers and law firms listed in Section 3.4 of this Agreement.

"**Class Members**" means those Persons who are within the Settlement Class as defined below.

"**Class Notice**" means providing information about this Agreement to the Class Members in accordance with Fed. R. Civ. P. 23(b)(3) and 23(e) and precedent of the United States Court of Appeals for the Fourth Circuit.

"**Class Notice Administrator**" means Matthew Garretson, Esq., the third party selected by Class Counsel and to be approved by the Court to develop and administer the Notice Plan, and who is a third party not related to the Defendants under the meaning of Section 267(b) of the Internal Revenue Code of 1986, as amended.

"**Class Period**" means the time between January 1, 1965 and December 31, 2020.

"**Complaint**" means the Class Action Complaint (Docket No. 1-1) in the Action.

"**Court**" means the United States District Court for the District of South Carolina, the Honorable Richard M. Gergel, presiding.

"**Effective Date**" means the date on which the time for any appeals of the Court's Final Approval Order has expired with no appeal filed, or, in the case that any appeal is filed, the date

on which all appeals are finally dismissed or decided in favor of affirming the Settlement without modification.

"**Eligible Claimant**" means any person claiming to be a member of the Settlement Class (or any person claiming to be an authorized representative of a member of the Settlement Class who is legally unable to assert a claim on his or her own behalf).

"**Fairness Hearing**" means the hearing at which the Court will consider whether to give final approval to this Agreement and Settlement; approve, modify, or deny a petition for an award of attorneys' fees and expenses; enter the Final Approval Order; and make such other final rulings as are contemplated by this Agreement.

"**Final Approval Order**" means the Court's entry of the final order approving this Agreement and Settlement following the Fairness Hearing in substantially the form attached hereto as Exhibit B.

"**FTC**" means the Tyco Fire Technology Center located at 2700 Industrial Parkway, Marinette, Wisconsin 54143.

"**Household**" means a residential housing unit, such as a house or an apartment, occupied by one or more Class Members for one (1) year or longer during the Class Period.

"**Individual Exposure Eligible Claimant**" means a Class Member who drank, cooked with, bathed in, or otherwise was exposed to water supplied from a Private Well Drinking Water Source for at least one (1) year during the Class Period.

"**Notice Plan**" means the plan developed by the Class Notice Administrator and Class Counsel to provide Class Notice using the forms attached as Exhibit C.

"**Participating Class Members**" means those individuals who are within the Settlement Class as defined below and who do not elect to opt out of the Settlement Class.

"**Person**" means a natural person or corporation, association, limited liability company, partnership, limited partnership, joint venture, affiliate, or any other type of legal entity and their respective spouses, heirs, predecessors, successors, executors, administrators, representatives or assigns.

"**Personal Signature**" means the actual signature by the person whose signature is required on the document. Unless otherwise specified in this Agreement, a document requiring a Personal Signature may be submitted by an actual original "wet ink" signature on hard copy, or a PDF or other electronic image of an actual signature provided under authorization of the person required to sign, or an electronic signature within the meaning of the Electronic Records and Signatures in Commerce Act, 15 U.S.C. §§ 7001, et seq., the Uniform Electronic Transactions Act, or their successor acts.

"**PFAS**" means, solely for purposes of this Agreement, fluorinated organic substances that contain one or more carbon atoms and on which at least one of the hydrogen atoms has been replaced by a substituent. "PFAS" include without limitation perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), perfluoroalkyl acids, perfluoroalkane sulfonyl fluorides, perfluoroalkyl iodides, per- and polyfluoroalkyl ether-based substances, fluoropolymers, side-chain fluorinated polymers, side-chain fluorinated polymers, and chemical precursors of all such substances. It is the intention of this agreement that the definition of PFAS be as broad, expansive, and inclusive as possible.

"**PPT**" or "**ppt**" means parts per trillion.

"**Preliminary Approval Order**" means the Court's order preliminarily approving this Agreement under Federal Rule of Civil Procedure 23, where such approval is in substantially the

same form as the Proposed Preliminary Approval Order, attached as Exhibit D to this Agreement and subject to the rights to terminate set forth in Sections 3.4, 3.5, and 9 below.

**"Property Damage Eligible Claimant"** means a Class Member who owns or owned a residential property in the Class Area.

**"Private Well Drinking Water Source"** means a privately-owned well located on private residential property within the Class Area that is or was a source of drinking water for one or more Households or Class Members.

**"Release"** means Section 5 below and the releases attached hereto as Exhibits F and G-2.

**"Released Claims"** means all claims against Defendants and related Persons that are released in this Agreement. Specifically excluded from this definition are latent or unknown personal injury/disease claims, including those arising from Eligible Personal Injuries, that are held by Class Members who neither opt out of nor participate in the Settlement.

**"Released Parties"** means Defendants and their respective past, present or future successors, heirs, assigns, predecessors, parents, subsidiaries, divisions, affiliates, shareholders or members, directors and officers, partners, employees, representatives, employees, servants, agents, attorneys, counsel, insurers and any other representatives, including but not limited to Johnson Controls International plc, Johnson Controls, Inc., Johnson Controls Fire Protection, LP, Central Sprinkler LLC, Tyco International Management Company, LLC, Tyco Fire & Security US Holdings LLC, Tyco Fire and Security (US) Management, LLC, Johnson Controls US Holdings LLC, JIH S.à.r.l., Johnson Controls Luxembourg European Finance S.à.r.l., Tyco International Finance S.A., Tyco International Holding S.à.r.l., Tyco Fire & Security S.à.r.l., Tyco Fire & Security Finance S.C.A., and Fire Products GP Holding, LLC.

**"Releasing Parties"** means the Class Representatives, the Participating Class Members, and their respective past, present or future agents, servants, officers, directors, shareholders, employees, partners, affiliates, representatives, successors, heirs, assigns, agents, attorneys, representatives, trustees, executors, insurers, and anyone claiming or liable by, through, under, or by virtue of any of them.

**"Settlement"** means the class settlement to be consummated under this Agreement pursuant to the Final Approval Order as described herein, including the Court's Order certifying a class for settlement purposes.

**"Settlement Administrator"** means David R. Cohen, Esq., the third party selected by Class Counsel and to be approved by the Court who will perform the work of Class Administration, and who is a third party not related to the Defendants under the meaning of Section 267(b) of the Internal Revenue Code of 1986, as amended.

**"Settlement Class"** means the class that the Court is being asked to certify for purposes of settlement, as defined in Section 3.1 of this Agreement.

**"Qualified Settlement Funds"** means the Class Qualified Settlement Fund (as defined in Section 4.1(b)) and the Personal Injury Qualified Settlement Fund (as defined in Section 4.1(d)), which shall be established within the meaning of Treas. Reg. § 1.468B-1 for purposes of receiving the net funds from the Total Settlement Amount for distribution to persons who have been found eligible to participate in the Settlement.

**"Total Settlement Amount"** shall have the meaning set forth in Section 4.1(a) of this Agreement.

**"Well Test"** means either (1) a test previously conducted at a Class Member's expense or otherwise by a vendor qualified to determine the levels of PFAS in drinking water using EPA

Method 533 and/or 537.1 or (2) a test conducted by vendor qualified to determine the levels of PFAS in drinking water using EPA Method 533 and/or 537.1 chosen at the sole and exclusive option of Defendants in accordance with Section 4.1(c). For purposes of this Agreement a Well Test shall be measured in PPT of total PFOA and PFOS.

## SECTION 2: EFFECT OF SETTLEMENT

2.1    The obligations incurred pursuant to this Agreement shall be in full and final disposition of the Released Claims and of this Action as against all Released Parties.

2.2    Upon the Effective Date, all Plaintiffs and Participating Class Members, and each of them, on behalf of themselves, their heirs, executors, successors and assigns, shall, with respect to each and every one of the Released Claims, release and forever discharge, and shall forever be enjoined from prosecuting, any and all Released Claims against any of the Released Parties.

2.3    Nothing in this Agreement, or in any final judgment or order of dismissal entered in the Action pursuant to this Settlement, constitutes an admission or concession by the Defendants of any liability or wrongdoing by the Defendants, that there is any validity to any allegation in the Complaint, or that the Class Claims could be certified for class treatment for purposes of litigation as opposed to settlement. The Defendants have not admitted or conceded any liability or wrongdoing, acknowledged any validity to the claims or issues in the Action, or acknowledged any weakness in their defenses in the Action. The Defendants have denied and continue to deny any wrongdoing alleged in the Complaint, and specifically deny and dispute the scientific, factual, legal, and other bases alleged to support Plaintiffs' Claims. Nothing contained in this Agreement, Settlement, or any related documents filed in connection therewith is intended to be or shall be interpreted by anyone as in any way suggesting anything to the contrary in this Action or in any other actions. Neither this Agreement, the Final Approval Order, the fact of Settlement, the

settlement negotiations, nor any related documents or facts related to the Settlement or Settlement negotiations, shall be offered or received in evidence against any Party for any purpose in any proceeding other than (i) in such proceedings as may be necessary to consummate or enforce this Agreement, or (ii) in any action against or by Plaintiffs or Class Members against or by any of the Released Parties in connection with a defense of *res judicata,* collateral estoppel, release, or other theory of claim preclusion, issue preclusion, or similar defense.

## SECTION 3. THE SETTLEMENT CLASS AND COURT APPROVAL

3.1 <u>SETTLEMENT CLASS DEFINITION</u>: Plaintiffs and Defendants shall jointly move the Court to certify, and Defendants shall not oppose certification of, the following Settlement Class for purposes of this Settlement only:

> All Persons who currently reside or formerly resided in or currently own or formerly owned, (i) a property with a Private Well Drinking Water Source; (ii) within the Class Area; (iii) for at least one (1) year during the Class Period.

The following are excluded from the Settlement Class to the extent that they fall within the definition above:

a. Defendants, any entity in which any of them has a controlling interest, and any of their legal representatives, employees, corporate officers, heirs, successors, or assigns;

b. The Judge(s) to whom this Action is or was assigned, any member of the Judge's immediate family, and any other judicial officer who is or was assigned to this Action; and

c. Any attorneys who are employees, partners, members or shareholders of Class Counsel.

d. Any person who has already settled and released any Defendant from any claim relating to the Released Claims.

If this Agreement terminates pursuant to Sections 3.4, 3.5, and/or 9 for any reason or litigation of the Action otherwise resumes, Defendants shall have the right to oppose or otherwise challenge class certification on any grounds, notwithstanding any provision of this Agreement.

3.2     CLASS REPRESENTATIVES: Plaintiffs, through Class Counsel, shall propose the following individuals as Class Representatives of the Settlement Class:

Joan Campbell; and

Richard Campbell.

Class Counsel believe that the individuals listed above are appropriate Class Representatives for purposes of this Settlement and the Settlement Class, and Defendants agree not to dispute or challenge such appropriateness solely for purposes of this Agreement and Settlement.

3.3     THE PARTIES' EFFORTS TO OBTAIN SETTLEMENT APPROVAL ORDER: Based on an analysis of the facts and the law and taking into account the burden and expense of litigation, as well as the fair, cost-effective, and assured method of resolving the Class Claims, Plaintiffs and Class Counsel have concluded that this Agreement provides benefits to the Class Members and is fair, adequate, reasonable, and in the best interest of the Class Members. The Plaintiffs and Class Counsel agree to recommend approval of this Agreement by the Court, and to support approval of this Settlement as fair, adequate, and reasonable. The Defendants will support the approval of this Settlement.  The Parties further agree to undertake all reasonable and proper steps and efforts to effectuate the terms and purposes of this Agreement, to secure the Court's approval, and to oppose any challenges to the fairness of the Settlement and any appeals from or challenges to the Final Approval Order. Those steps shall include the following:

a.     Execution of Agreement. The Parties, through their respective counsel, shall execute this Agreement.

b.    <u>Agreement to Participate</u>.  Plaintiffs shall execute an Agreement to Participate in the form attached as Exhibit E to this Agreement.  Class Counsel shall provide the executed copies of the Agreements to Participate to Defendants within seven (7) days after this Agreement is fully executed.

c.    <u>Preliminary Approval of Settlement and Notice</u>. As soon as reasonably possible upon execution of this Agreement but by no later than any deadline set by the Court, the Parties shall file a motion with the Court for entry of a Preliminary Approval Order, which Defendants agree not to oppose. The motion shall seek an order:

(1) Conditionally certifying the Settlement Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

(2) Preliminarily approving the terms and conditions of the Settlement embodied in this Agreement subject to the Fairness Hearing and final approval by the Court in the Final Approval Order;

(3) Finding that the Notice Plan developed by the Class Notice Administrator and Class Counsel using the Class Notice attached as Exhibit C to this Agreement fairly and adequately describe the terms and effect of this Agreement and the Settlement; give notice of Class Members' right to opt out of the Class Settlement; describe how Class Members may object to approval of the Settlement; give notice of the time and place of the Fairness  Hearing for final approval of the Settlement; and satisfy the requirements of Fed. R. Civ. P. 23(e), due process, and Fourth Circuit law regarding notice to Class Members of the Settlement;

(4) Appointing and designating Class Counsel as the counsel for the Settlement Class under Fed. R. Civ. P. 23(g).

(5) Appointing and designating Plaintiffs as the representatives for the Settlement Class;

(6) Preliminarily approving the plan of distribution of Settlement proceeds to Class Members; and

(7) Appointing David R. Cohen, Esq. as Settlement Administrator and Matthew Garretson, Esq. as Class Notice Administrator.

d.  <u>Providing Class Notice</u>. Subject to Court approval, Class Counsel shall provide Class Notice in accordance with the Notice Plan developed by the Class Notice Administrator and Class Counsel using Exhibit C to this Agreement and any additional direction by the Court.

e.  <u>Providing Notice Pursuant to CAFA</u>. Within ten (10) days after the Parties file the Preliminary Approval Motion with the Court, Defendants shall provide the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, to the Appropriate Federal Official and Appropriate State Official, as defined in 28 U.S.C. § 1715(a).  Defendants agree to provide copies to Class Counsel at the same time.

f.  <u>Motion for Final Approval of Class Settlement</u>. At least twenty-one (21) days prior to the Fairness Hearing, the Parties, shall file a motion seeking a Final Approval Order, which Defendants agree not to oppose, that (i) certifies the Settlement Class; (ii) approves the Settlement as fair, adequate, and reasonable under Federal Rule of Civil Procedure 23(e); (iii) approves the plan of distribution of Settlement proceeds to Class Members described in Section 4 below; (iv) dismisses the Action with prejudice; (v) rules that each of the Releasing Parties has released, waived, compromised, settled, and discharged all Released Claims; (vi) enjoins all further litigation by the Plaintiffs and Participating Class Members with respect to the Released Claims; (vii) awards any attorneys' fees, costs, and expenses; and (viii) reserves the Court's exclusive and

continuing jurisdiction over the interpretation, performance, enforcement, and administration of this Agreement and the Court's orders in the Action.

g.     The Fairness Hearing. On the date and time set by the Court, Class Counsel and counsel for Defendants shall participate in the Fairness Hearing.  Class Counsel and counsel for Defendants will reasonably cooperate with one another to obtain a Final Approval Order.

3.4     OBJECTION PROCEDURE: Each Class Member wishing to object to the Settlement shall file with the Court a timely written notice of objection delivered or postmarked no less than forty-nine (49) days after entry of the Preliminary Approval Order, the exact calendar date to be specified in the Preliminary Approval Order.  The objection shall set forth the reasons for the Class Member's objection.  The objection must bear the Personal Signature of the Class Member, and state (i) the Class Member's name, address, and telephone number; (ii) the factual basis for the claim of class membership, including whether the objector is a current or former resident of a property in the Class Area, and for what period of time during the Class Period; (iii) whether the Class Member plans to appear at the Fairness Hearing; and (iv) the complete factual basis for the objection, along with whatever legal authority, if any, the objector asserts regarding the objection.  No "mass" or "class" Objections shall be valid; should any such Objections be received, Defendants shall have the right to terminate the settlement in accordance with Section 9 below.  The objection shall be filed with Robin L. Blume, Clerk of Court, United States District Court for the District of South Carolina, Charleston Federal Courthouse, 85 Broad Street, Charleston, South Carolina 29401.  Additionally, one copy of the written objection shall be served by first-class mail upon Class Counsel and Defendants' Counsel, as follows:

Class Counsel:

Paul J. Napoli, Esq.
Hunter Shkolnik, Esq.
Napoli Shkolnik

14

270 Munoz Rivera Ave, Ste 201
Hato Rey, PR 00918
(787) 493-5088
PNapoli@NSPRLaw.com
Hunter@NSPRlaw.com

Robert A. Bilott, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
(513) 381-2838
bilott@taftlaw.com

Counsel for Tyco Fire Products LP and Chemguard, Inc.:

Joseph G. Petrosinelli, Esq.
Liam J. Montgomery, Esq.
Williams & Connolly, LLP
725 12th Street, N.W.
Washington, DC 20005

Counsel for ChemDesign Products, Inc.:

J. Hayes Ryan, Esq.
Jonathan B. Blakley, Esq.
Gordon Rees Scully Mansukhani, LLP
1 N. Franklin Street, Ste. 800
Chicago, IL 60606

3.5     OPT OUT PROCEDURE:  Prior to Final Approval of this Settlement, Class

Members who do not file an objection to the Settlement pursuant to Section 3.4 may exclude

themselves from the Settlement by following the procedure stated in the Class Notice, the proposed

form of which is attached to this Agreement as Exhibit C, and must place their Personal Signature

on the form under penalty of perjury in the presence of at least one adult witness subject to approval

by the Court.  Within ten (10) business days after the date fixed by the Court for Class Members

to opt out from the Settlement, Class Counsel shall furnish Defendants and the Court in writing

with a complete list of all Class Members who have elected to opt out and copies of all opt out

notices received plus any Well Test result for Class Members who submitted an opt out notice (the

"Opt Out Notice Package").  Those Class Members who do file an objection to this Settlement pursuant to Section 3.4 may exclude themselves from the Settlement within seven (7) days of the Court ruling on their objections by following the procedure stated in the Class Notice, the proposed form of which is attached to this Agreement as Exhibit C, and must place their Personal Signature on the form under penalty of perjury in the presence of at least one adult witness subject to approval by the Court.  Within fourteen (14) days after the Court rules on any objections to the Settlement, Class Counsel shall furnish Defendants and the Court in writing with an updated and complete list of all Class Members who have elected to opt out, including objecting Class Members who subsequently opted out (if any), and copies of all opt out notices received plus any Well Test result for Class Members who submitted an opt out notice (the "Updated Opt Out Notice Package").  No "mass" or "class" opt out requests shall be valid, and no Class Member may submit an opt out request on behalf of any other Class Member.  Any Defendant may, at its option and sole discretion, terminate the Settlement if any one of the following numbers of Class Members opt out of this Settlement:

a. Any Class Member who currently resides or formerly resided in and lives or lived on, or currently owns or formerly owned a property within the Class Area that has had at least one or more Well Tests showing over 70 ppt of PFOA and PFOS combined;

b. Three percent (3%) of the total number of the Class Members who participate in the settlement, object to the settlement, and opt out of the settlement who currently reside or formerly resided in or currently own or formerly owned a property within the Class Area that has had at least one or more Well Tests showing between 20 and 69 ppt (inclusive) of PFOA and PFOS combined;

c. Five percent (5%) of the total number of the Class Members who participate in the settlement, object to the settlement, and opt out of the settlement who do not fall into categories (a) or (b) above; or

d. Five percent (5%) of the total number of the Class Members who participate in the settlement, object to the settlement, and opt out of the settlement without regard to any Well Test results.

Such option to terminate shall be exercised, if at all, within fifteen (15) business days of a Defendant's receipt of the Opt Out Notice Package or, if one is provided, the Updated Opt Out Notice Package. If any Defendant exercises its option to terminate this Settlement, then the termination provisions set forth in Section 9 of this Agreement shall apply.

3.6     AGENCY OBJECTION:     Any Defendant may, at its option and sole discretion, terminate the Settlement if any federal or state authority objects to or requires material modifications to this Agreement. Such option to terminate shall be exercised, if at all, within fifteen (15) business days of a Defendant's receipt of any written notice by such authority stating its objection or required modification to this Agreement. If any Defendant exercises its option to terminate this Settlement, then the termination provisions set forth in Section 9 of this Agreement shall apply.

3.7     APPEAL OF FINAL APPROVAL ORDER:  In the event of any appeal, all dates in the Agreement triggered after the date of the Final Approval Order are stayed until fourteen (14) days after all opportunities for further appellate review have ended. If any Person appeals the Court's Final Approval Order, the Parties will use their best efforts to defeat the appeal.

**SECTION 4: SETTLEMENT FUNDS AND SUBMISSION OF CLAIMS**

4**.**1     SETTLEMENT AMOUNT AND BENEFITS PROMISED IN EXCHANGE FOR

RELEASES:  In consideration of all the promises and covenants set forth in this Agreement, and

of the release and dismissal of the Released Claims against the Released Parties as contemplated

in this Agreement, Defendants shall provide the following:

a.     Total Settlement Amount to be Paid by Defendant Tyco:  Tyco shall pay

$15,000,000.00, the "Class Settlement Amount," which shall be distributed in accordance

with Section 4.1(b).  Tyco shall separately pay $2,500,000.00, the "Personal Injury Fund

Amount," which shall be distributed in accordance with Section 4.1(d).  Together, the Class

Settlement Amount and Personal Injury Fund Amount shall be referred to as the "Total

Settlement Amount."   The Personal Injury Fund Amount is separate from the Class

Settlement Amount and is not subject to the requirements of Federal Rule of Civil

Procedure 23.

b.     Claims covered by the Class Settlement Amount:  The Class Settlement

Amount shall be placed in an account (the "Class Qualified Settlement Fund") established

pursuant to Section 6 below and administered by the Settlement Administrator, who shall

have full and final authority to determine the amount from such Fund to be paid to any

Class Member.  The Class Settlement Amount, net of any approved attorneys' fees and

expenses as described further below, shall be allocated and distributed amongst the

Participating Class Members who establish, in accordance with the procedures outlined in

Section 4.1(c) below and in Exhibit F, any and all qualifying claims and injuries.  The Class

Settlement Amount shall be divided as follows: (i) $11,000,000 shall be allocated to

Property Damage Eligible Claimants; and (ii) $4,000,000 shall be allocated to Individual

Exposure Eligible Claimants. All payments made to Participating Class Members shall be made by check. All Participating Class members must cash checks within one hundred twenty (120) days of issuance. The Settlement Administrator may, at his discretion, either (1) reissue any voided check one time with the same one hundred twenty (120) day limit as noted above or (2) the Settlement Administrator may escheat the funds to the State of Wisconsin. If any Participating Class Member does not cash a check within 120 days, whether in the first instance or upon reissue, his or her check will be void. The Settlement Administrator shall escheat to the State of Wisconsin any funds not cashed within these deadlines. The 120-day limitation shall be printed on the face of each check. The voidance of checks shall have no effect on any Class Members' release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

      c.     <u>Proof of Class Claims</u>: Within forty-nine (49) days of the Effective Date, Participating Class Members shall provide to the Settlement Administrator and Defendants, in a manner to be agreed by the Parties, a sworn declaration substantially in the form provided in Exhibit F that certifies as truthful records sufficient to demonstrate that (1) they currently reside or formerly resided in or currently own or formerly owned a residential property in the Class Area for at least one year during the Class Period; and, if applicable, (2) they drank, cooked with, bathed in, or otherwise were exposed to water supplied from a Private Well Drinking Water Source. To the extent a Participating Class Member has in their possession, custody, or control records sufficient to show PFAS testing results as to water, soil, blood or any other relevant media, such Participating Class Members shall provide such testing records to the Settlement Administrator and Defendants with the sworn declaration described in the preceding sentence. To the extent

Defendants do not have a valid Well Test record for a Participating Class Member's Private Well Drinking Water Source and a Participating Class Member does not have in their possession, custody, or control such testing records as to their Private Well Drinking Water Source, Defendants Tyco and Chemguard shall obtain at their cost from a vendor qualified to determine the levels of PFAS in drinking water under either EPA Method 533 and/or 537.1 vendor of their sole and exclusive choosing one (1) Well Test for that Private Well Drinking Water Source. The results reflected in any and all of these tests shall be used for purposes of the opt out provisions in Section 3.5, above, and may be used by Class Counsel and/or the Settlement Administrator in allocating the Total Settlement Amount.

      d.    <u>Claims covered by the Personal Injury Fund Amount</u>: The Personal Injury Fund Amount is separate from the Class Settlement Fund Amount and shall be placed in an account (the "Personal Injury Qualified Settlement Fund") established pursuant to Section 6 below and administered by the Settlement Administrator, who shall have full and final authority to determine the amount from such Fund to be paid to any Class Member who provides adequate proof that he or she has or had one or more of the following medical conditions: (1) testicular cancer; (2) kidney cancer; (3) pregnancy-induced hypertension; (4) ulcerative colitis; or (5) thyroid disease (the "Eligible Personal Injuries") (those who sign a Release of Personal Injury and receive payments for Eligible Personal Injuries shall be referred to as "Eligible Personal Injury Claimants"). In no event shall the Released Parties be liable for payments from the Personal Injury Qualified Settlement Fund in excess of the Personal Injury Fund Amount.

      For the avoidance of doubt, the inclusion of the Eligible Personal Injuries in this Agreement does not constitute an admission by Defendants that the Eligible Personal

Injuries are in any way generally or specifically caused by or associated with exposure to PFAS chemicals. For further avoidance of doubt, the exclusion of any potential injury from the Eligible Personal Injuries in this Agreement does not constitute an admission by Plaintiffs or their Counsel that the other such injuries are not generally or specifically caused by exposure to PFAS chemicals.

    e.    Proof of Personal Injury Fund Claims and Release:

    (1)  Proof of Personal Injury Claim: Within twenty-eight (28) days of the Effective Date, Eligible Personal Injury Claimants shall provide to the Settlement Administrator and Defendants, in a manner to be agreed by the Parties, a sworn declaration substantially in the form provided in Exhibit G-1 that certifies as truthful records sufficient to demonstrate that they (1) currently reside or formerly resided in a residential property in the Class Area for at least one year prior during the Class Period (2) drank, cooked with, bathed in, or otherwise were exposed to water supplied from a Private Well Drinking Water Source, and (3) were medically diagnosed with one or more of the Eligible Personal Injuries, with the initial diagnosis occurring more than one year after they first resided in or lived on a residential property in the Class Area. The sworn declaration described in the preceding sentence shall include with it at least one copy signed in blank of the medical records authorization provided in Exhibit H.

    (2)  Release of Personal Injury Claim: Within twenty-eight (28) days of the date of the notice from the Settlement Administrator to an Eligible Personal Injury Claimant that he or she is eligible for a Personal Injury Fund

payment, such Eligible Personal Injury Claimant shall provide to the Settlement Administrator and Defendants, in a manner to be agreed by the Parties, a sworn release substantially in the form provided in Exhibit G-2. The Settlement Administrator shall not release any payment for personal injuries to any Eligible Personal Injury Claimant without first receiving confirmation from Defendants that each release form has been properly executed.

(3) For the avoidance of doubt, a Class Member who neither opts out of nor participates in the Settlement shall not release or discharge latent or unknown personal injury/disease claims, including those arising from Eligible Personal Injuries.

f.    <u>Remaining Personal Injury Fund Amounts</u>:  The Settlement Administrator shall make payments from the Personal Injury Qualified Settlement Fund based on values the Settlement Administrator establishes for each Eligible Personal Injury.  If, after 365 days from the Effective Date, any funds remain in the Personal Injury Fund, the Settlement Administrator shall within 14 days of that date allocate such remaining funds on a pro rata basis (to be set at the Settlement Administrator's sole discretion) to the Personal Injury Fund claimants whom the Settlement Administrator previously found eligible for payment and who signed a release in accordance with Section 4.1(e)(1)–(2).

Except as provided in Section 4.1(c), in no event shall Defendants be obligated to pay anything in excess of the amounts specified above, including but not limited to additional amounts for attorneys' fees, expenses, or interest.  In accordance with the Parties' Proposed Final Approval Order to be submitted to the Court, the Class Settlement Amount and Personal Injury Settlement

Amount, less reasonable attorneys' fees and expenses as provided for in Sections 4.6 and 4.7, are to be distributed to Participating Class Members and Eligible Personal Injury Claimants, respectively. Defendants shall have no obligation, interest in, or responsibility with respect to the allocation, administration, or distribution of the Total Settlement Amount.

4.2 <u>EFFECT OF SUBMITTING CLAIM FORM</u>: By submitting a claim form under this Section 4, each Eligible Claimant irrevocably agrees to be bound by and comply with the terms of this Agreement. By submitting a signed release under this Section 4, each Eligible Personal Injury Claimant irrevocably agrees to be bound by and comply with the terms of this Agreement. Specifically, and without limitation, by submitting such a claim form or release form (as applicable), each Eligible Claimant and Eligible Personal Injury Claimant irrevocably:

(a) agrees to release his/her claims against the Released Parties as described in Section 5 below and to execute and submit the Release (attached in Exhibits F and G-2) to the Settlement Administrator.

(b) agrees not to opt out of the Settlement.

(c) agrees that once the Released Parties have made payment of the Total Settlement Amount, his/her counsel shall stipulate to the dismissal, with prejudice, of any lawsuit he/she may have filed asserting a claim covered by the Release, but he/she shall not file any such dismissals with the Court until he/she has received from the Settlement Administrator a final compensation determination and, if applicable, received his/her compensation payment; and

(d) covenants not to bring any action, lawsuit, or other proceeding for or based on a claim covered by the Release, as described in Section 5 below.

Such Release, agreement and authorization to dismiss, stipulation of dismissal, and covenant not to sue shall be final and irrevocable upon submission of a claim form (regardless of

whether or in what amount the Eligible Claimant or Eligible Personal Injury Claimant receives compensation under this Agreement), with the sole exception that the Release, stipulation of dismissal, agreement and authorization to dismiss, and covenant not to sue shall be null and void if the Released Parties exercise their termination rights pursuant to Sections 3.4, 3.5, and/or 9. For the avoidance of doubt and without limiting the foregoing, an Eligible Claimant or Eligible Personal Injury Claimant may not (for any reason or under any circumstance) withdraw a claim form once submitted, opt out of the Settlement, or revoke his/her agreement to release and dismiss claims as specified in the Release.

All Eligible Claimants and Eligible Personal Injury Claimants who submit a claim or release form agree (as applicable) that they are subject to the personal jurisdiction of the Court and, as relevant, the Settlement Administrator for all issues related to this Agreement, and are bound by the Court's and Settlement Administrator's decisions as final, binding, and non-appealable .

Each Eligible Claimant and Eligible Personal Injury Claimant who submits a claim or release form (as applicable) to the Settlement Administrator waives and releases any claim to receive any punitive damages within the scope of the Release, and further understands and agrees that no payment made pursuant to Agreement is or shall be deemed to be attributable to punitive damages.

4.3    Claims Involving Legal Incompetents or Minors.  If required by applicable state law as determined by the Settlement Administrator, an Eligible Claimant's counsel or a person authorized by an Eligible Claimant's counsel shall seek court approval of the settlement of claims subject to the Release brought on behalf of a legally incapacitated or minor person and such counsel will assume responsibility for all necessary probate and guardianship filings, all filings

relating to court approval of the settlement, and all issues or rulings arising therefrom or related thereto. The Eligible Claimant shall be responsible for all costs and expenses relating to such approval. Payments on such claims may be withheld by the Settlement Administrator until the necessary court approval is obtained.

4.4 <u>Survival and Wrongful Death Claims</u>. If required by applicable state law as determined by the Settlement Administrator, an Eligible Claimant's counsel or a person authorized by an Eligible Claimant's counsel shall seek court approval of the settlement of claims subject to the Release brought on behalf of a decedent or others authorized under applicable state law to advance survival or wrongful death claims. The Eligible Claimant's counsel shall be responsible for all necessary filings relating to notice and approval of such settlement and the Eligible Claimant shall be responsible for all costs and expenses relating to such approval. Payments on such claims may be withheld by the Settlement Administrator until the necessary court approval is obtained.

4.5 <u>Other Court Approval</u>. To the extent other court approvals are required before an Eligible Claimant may receive payment pursuant to this Agreement and the Settlement, such Eligible Claimant or his/her counsel must obtain such approval *before* the Settlement Administrator makes any payment to him/her.

4.6 <u>Application for Attorneys' Fees and Expenses</u>: Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel may apply for a fee consisting of some portion of the Total Settlement Amount. That application shall be filed not less than 20 days before objections are due pursuant to Section 3.4. Subject to Class Counsels' application for attorneys' fees and expenses, and in accordance with the Final Approval Order, the Settlement Administrator shall distribute attorneys' fees and expenses approved by the Court (including but not limited to: expert witness fees, consultants' fees, and litigation expenses; any court-approved class representative service

awards; and the cost of Class Notice and Class Administration) from the Total Settlement Amount, which shall be allocated on a pro rata basis from each of the Class Qualified Settlement Fund and the Personal Injury Qualified Settlement Fund. Any attorneys' fees and expenses paid to Class Counsel from the Total Settlement Amount shall be paid only to the extent awarded by the Court, subject to the holdback provisions in Section 6.8, and within 10 days after the Court has entered the Final Approval Order and dismissed the claims of Participating Class Members with prejudice, with no appeals pending or possible.

4.7 <u>Expenses of Class Notice and Class Administration</u>: All reasonable expenses of providing Class Notice in accordance with Section 3.3 and Exhibit C and all reasonable expenses of Class Administration shall be paid from the Total Settlement Amount and shall be allocated on a pro rata basis from each of the Class Qualified Settlement Fund and the Personal Injury Qualified Settlement Fund.

**SECTION 5: RELEASES**

5.1 In consideration of the payment of the Total Settlement Amount, the Releasing Parties agree to fully release and forever discharge the Released Parties from any and all past, present or future claims, demands, obligations, causes of action, rights, damages, costs, attorneys' fees, loss of services, earnings or consortium, future medical expenses, expenses and compensation of any nature whatsoever, whether based on tort, contract (express, implied or otherwise), statute or any other theory of recovery, and whether for compensatory or punitive damages, that the Releasing Parties now have or may hereafter accrue or otherwise be acquired, in any way, including those arising out of or relating to (i) the acts, omissions or events alleged in the Action, (ii) the Releasing Parties' alleged exposure to or consumption of PFAS, (iii) the alleged presence of PFAS in, on, or around any property owned or occupied by the Releasing Parties, including the

Releasing Parties' homes and drinking water wells, and (iv) the alleged presence of PFAS in the Releasing Parties' water supply. The Released Parties agree to waive any defenses based on "claim splitting" or related doctrines that might otherwise apply if the Releasing Parties seek to assert claims excluded from the release by the preceding sentence.

5.2    The Releasing Parties acknowledge and agree that the releases set forth in Section 5.1 above and in Exhibits F and G-2 are general releases. The Releasing Parties expressly waive and assume the risk of any and all claims for damages that exist as of this date but of which the Releasing Parties do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and that, if known, would materially affect the Releasing Parties' decision to enter into this Agreement. The Releasing Parties acknowledge and understand that they may have suffered damages or may incur liabilities that are unknown at the present time, which if known, might have affected their decision to enter into this release. The Releasing Parties considered such uncertainties in the course of negotiations leading to this Agreement, and the Releasing Parties have determined the Total Settlement Amount to be fair and adequate compensation with due regard for such uncertainties. In making this waiver, the Releasing Parties understand and acknowledge that they may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of the foregoing release, but agree that they have taken that possibility into account in reaching this Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which the Releasing Parties expressly assume the risk, they fully, finally, and forever settle and release any and all claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts. The foregoing waiver includes, without

limitation, an express waiver, to the fullest extent not prohibited by law, by the Releasing Parties of any and all rights under California Civil Code Section 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties understand California Civil Code Section 1542 and expressly waive its provisions. The Releasing Parties also acknowledge and understand that the Released Parties specifically and separately bargained for this waiver of the provisions of Section 1542 of the California Civil Code.

5.3     It is hereby understood and agreed that this Agreement is intended to constitute a full and final release by the Releasing Parties of all their claims against the Released Parties. Pursuant to this Agreement, the Released Parties are, and shall in the future be, discharged from any and all liability whatsoever to the Releasing Parties for the claims released in Section 5.1 above and in Exhibits F and G-2, including, without limitation, liability for contribution to any other person.

5.4     The Parties agree that this release will not affect the bottled water and/or Point of Entry Treatment system Tyco has offered or been providing to residents in the Class Area (as defined herein). The Release will not affect the ability of eligible households to be connected to a municipal water line or other permanent drinking water remediation measure, which Tyco is separately providing in cooperation with the Wisconsin Department of Natural Resources.

5.5    By this Agreement, the Releasing Parties hereby covenant and agree to indemnify and hold Defendants harmless of and from any future or further exposure or payment arising out of the Released Claims, including but not limited to, any litigation, claim or settlement which may hereafter be instituted, presented or affected by or on behalf of the Releasing Parties, or by any person seeking contribution or subrogation in connection therewith.  It is understood that the intent of this Agreement is that the Releasing Parties will protect, defend, and hold the Released Parties harmless from any future or further payments or exposure with regard to the matters addressed in this Agreement, including but not limited to claims for reimbursement of medical insurance benefits paid on behalf of the Releasing Parties and/or liens for legal services rendered to the Releasing Parties.  In accordance with *Pierringer v. Hoger*, 21 Wis. 2d 182 (1963), the Releasing Parties agree to credit and satisfy that portion of the total damages, if any, which may have been caused by the Released Parties, as such may be determined in any litigation, claim or settlement which may hereafter be instituted in connection with the matters addressed in this Agreement, including without limitation any claim of NEGLIGENCE OR STRICT LIABILITY of the Released Parties.  The parties specifically contemplate that this release will have the same effect as the releases used in the case of *Pierringer v. Hoger*, 21 Wis. 2d 182 (1963).

5.6    The distribution described in Section 4 of this Agreement is the exclusive consideration provided to the Releasing Parties for the Released Claims against the Released Parties.  Each Participating Class Member and Eligible Personal Injury Claimant shall, as applicable, look solely to the Total Settlement Amount (less reasonable attorneys' fees and expenses) for satisfaction of all claims released herein.  Accordingly, the Released Parties shall not be subject to liability or expense of any kind to the Releasing Parties with respect to any Released Claims, other than as set forth in this Agreement.

5.7    The Releasing Parties shall not at any time hereafter whether directly or indirectly or individually or as a member or representative of a class commence, assign, or prosecute any claim, demand, or cause of action at law or otherwise for damages, loss or injury arising out of or relating to any act, error, omission, event or thing within the scope of the releases set forth in Section 5.1 above and Exhibits F and G-2 against Releasing Defendants.  The Releasing Parties consent to the jurisdiction of this Court or, at Defendants' sole option, any other court having jurisdiction to enter an injunction barring them from commencing or prosecuting any action or other proceeding, or seeking other benefits, based upon the Released Claims.

5.8    ChemDesign Products, Inc., on behalf of itself, and its present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parents, subsidiaries, shareholders, members, insurers, and successors, fully, finally, and forever releases, relinquishes and discharges Tyco Fire Products LP and Chemguard, Inc., and their respective past, present or future successors, heirs, assigns, predecessors, parents, subsidiaries, divisions, affiliates, shareholders or members, directors and officers, partners, employees, representatives, agents, attorneys, insurers, and any other representatives, including but not limited to Johnson Controls International plc, Johnson Controls, Inc., Johnson Controls Fire Protection, LP, Central Sprinkler LLC, Tyco International Management Company, LLC, Tyco Fire & Security US Holdings LLC, Tyco Fire and Security (US) Management, LLC, Johnson Controls US Holdings LLC, JIH S.à.r.l., Johnson Controls Luxembourg European Finance S.à.r.l., Tyco International Finance S.A., Tyco International Holding S.à.r.l., Tyco Fire & Security S.à.r.l., Tyco Fire & Security Finance S.C.A., and Fire Products GP Holding, LLC, of and from each and every claim arising out of or related in any way to (i) the acts, omissions or events alleged in the Action as to the Releasing Parties, (ii) the Releasing Parties' alleged exposure to or consumption of PFAS, (iii) the alleged presence of PFAS

in, on, or around any property owned or occupied by the Releasing Parties, including the Releasing Parties' homes and drinking water wells, and (iv) the alleged presence of PFAS in the Releasing Parties' water supply.

5.9      Tyco Fire Products LP and Chemguard, Inc., on behalf of themselves, and their respective past, present or future successors, heirs, assigns, predecessors, parents, subsidiaries, divisions, affiliates, shareholders or members, directors and officers, partners, employees, representatives, agents, attorneys, insurers, and any other representatives fully, finally, and forever releases, relinquishes and discharges ChemDesign Products, Inc. and its present, former, and future direct and indirect affiliates, agents, divisions, predecessors, parents, subsidiaries, shareholders, members, insurers, and successors of and from each and every claim arising out of or related in any way to (i) the acts, omissions or events alleged in the Action as to the Releasing Parties, (ii) the Releasing Parties' alleged exposure to or consumption of PFAS, (iii) the alleged presence of PFAS in, on, or around any property owned or occupied by the Releasing Parties, including the Releasing Parties' homes and drinking water wells, and (iv) the alleged presence of PFAS in the Releasing Parties' water supply.

## SECTION 6: QUALIFIED SETTLEMENT FUNDS AND PAYMENTS

6.1      Subject to the holdback assessment set forth in Section 6.8 below, within forty-nine (49) days following the Effective Date, Defendants Tyco and Chemguard shall wire transfer the Class Settlement Amount and the Personal Injury Fund Amount, respectively, to two different Qualified Settlement Funds established by the Settlement Administrator in accordance with Treasury Regulations § 1.468B-1 *et seq.*, as described below, for ultimate distribution to Participating Class Members and others in accordance with this Agreement.  In no event shall any Defendant have any liability whatsoever with respect to the Total Settlement Amount once it is

paid to the Settlement Administrator as specified in this Section. If the Qualified Settlement Funds have not been established or approved by the Court by the deadline for payment specified herein, Defendants shall not be obligated to pay the Total Settlement Amount until five (5) business days after the Qualified Settlement Funds are established and approved by the Court.

6.2     The Settlement Administrator may not distribute any monies to any person, including any Participating Class Member or Eligible Personal Injury Claimant, unless and until (a) the Court has issued a Final Approval Order, (b) all deadlines, including those set forth in Section 3.5, for Defendants to terminate the Settlement have passed, and (c) Defendants have confirmed in writing their agreement that distributions from the Total Settlement Amount may be made from the Qualified Settlement Funds.

6.3     The Qualified Settlement Funds shall be invested in United States Government Treasury obligations or money market funds invested solely in United States Treasury obligations, provided, however, that such portions of the Qualified Settlement Funds as may reasonably be needed to pay current expenses associated with issuing the Class Notice and administering the Qualified Settlement Funds may be deposited in a federally insured bank account. All interest earned by the Qualified Settlement Funds shall become and remain part of such Fund.

6.4     The Released Parties shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the Qualified Settlement Funds, including, but not limited to, the costs and expenses of such investment, distribution, or administration.

6.5     The Settlement Administrator shall be solely responsible, subject to oversight of the Court, for filing all informational and other tax returns necessary to report any taxable or net taxable income earned by the Qualified Settlement Funds. The Settlement Administrator shall

disburse from the Qualified Settlement Funds as and when legally required, any tax payments, including interest and penalties due on income earned by the Qualified Settlement Funds and any estimated taxes, any interest or penalties, or any taxes or tax detriments that may be imposed on any Released Party. The Released Parties shall have no responsibility to make any filings relating to the Qualified Settlement Funds and shall have no responsibility to pay tax on any income earned by the Qualified Settlement Funds or to pay any taxes on the Qualified Settlement Funds. The Qualified Settlement Funds shall be used to indemnify and hold the Released Parties harmless against any such taxes (including any taxes payable by reason of any such indemnification) that Released Parties are required to pay. The Released Parties disclaim any responsibility for characterizing, for tax purposes, the actual settlement amount paid to any claimant, or for the impact such payment has on any federal, state, local or other governmental benefit for that recipient.

6.6     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Claims Administrator" of the Qualified Settlement Funds shall be the Settlement Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Qualified Settlement Funds (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

6.7     The Settlement Administrator shall treat the Qualified Settlement Funds as being at all times "qualified settlement funds" within the meaning of Treas. Reg. § 1.468B-l. The Parties, Class Counsel, Defendants' Counsel, and the Settlement Administrator will not ask the Court to take any action inconsistent with the treatment of the Qualified Settlement Funds in such manner. In addition, the Settlement Administrator and, as required, the Parties shall timely make such

elections as necessary or advisable to carry out the provisions of this Section, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(i)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Settlement Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Qualified Settlement Funds being "qualified settlement funds" within the meaning of Treas. Reg.§ 1.468B-l.

6.8     Any fees and expenses awarded pursuant to Section 4.6 above shall be subject to a "Common Benefit Holdback Assessment" under Case Management Order No. 3 Ordered by United States District Court Judge Richard Mark Gergel dated April 26, 2019. Such Order requires a holdback assessment of 6% allotted for common benefit attorneys' fees and 3% allotted for reimbursement of permissible common benefit costs and expenses from any settlements(s). In accordance with CMO No. 3, Tyco shall, contemporaneously with the distributions set forth in Section 6.1 above, withhold such monies from the Total Settlement Amount and pay them directly into an interest-bearing account established by future order of the Court.

**SECTION 7: APPOINTMENT AND DUTIES OF SETTLEMENT ADMINISTRATOR**

7.1     Class Counsel shall propose, and the Court shall appoint a Settlement Administrator to administer the Settlement. The Settlement Administrator may not be a person who has acted as counsel, or otherwise represented a party, in claims arising out of alleged PFAS exposure. The Settlement Administrator shall have the authority to perform all actions consistent with the terms of this Agreement that the Settlement Administrator deems to be reasonably necessary for the efficient and timely administration of the Settlement, but shall have no authority to alter in any

way the Parties' rights and obligations under this Agreement. The Released Parties shall not have any involvement or responsibility for selecting or supervising the Settlement Administrator and are not subject to the authority of the Settlement Administrator.

7.2     Except as set forth in the Agreement, Class Counsel shall pay the Settlement Administrator's reasonable fees and costs from the Qualified Settlement Funds, and in no event are the Released Parties responsible for any fees and costs to be paid to the Settlement Administrator. The Settlement Administrator has the discretion to retain administrative assistance, including but not limited to assistance with the establishment and administrator of the Qualified Settlement Fund, claims processing and any administrative procedures established pursuant to Sections 7.4 and 7.5. The cost for this assistance will be considered a Settlement Administrator cost to be paid out of the Settlement Amount.

7.3     The Settlement Administrator must uphold the responsibilities for claim administration, review, and adjustment set forth in this Agreement, as well as additional responsibilities, if any, set forth in any subsequent amendments to this Agreement. In no event shall the Released Parties be liable for the acts, omissions, wrongdoing (intentional or otherwise), negligence, fraud, misconduct, or mishandling by the Settlement Administrator of its duties and responsibilities under this Agreement.

7.4     The Settlement Administrator may create administrative procedures, supplementary to (and not inconsistent with) those specified herein or in the Exhibits hereto, that provide further specific details about how the Settlement is to be administered and/or other aspects; provided, however, that such procedures comply, or otherwise are not in conflict, with the terms of this Agreement.

7.5     Without limitation of the foregoing, the Settlement Administrator shall have the

authority to:

(a)     review and investigate any submissions for deception, dishonesty, or fraud and to take such actions as the Settlement Administrator deems necessary to prevent the payment on claims involving deception, dishonesty, or fraud; and

(b)     modify and/or supplement the forms required of Eligible Claimants or Eligible Personal Injury Claimants to provide for more efficient administration of the Settlement, provided that (i) such changes may not materially alter the substance of such form without the consent of Class Counsel and Released Parties, (ii) no change shall be made to the form of Release or form of the stipulation of dismissal without the Released Parties and Class Counsel's prior written consent, and (iii) no Eligible Claimant or Eligible Personal Injury Claimant who previously submitted an earlier iteration of any form shall be required to submit an amended form.

7.6     All information submitted by Eligible Claimants and Eligible Personal Injury Claimants to the Settlement Administrator will be recorded in a computerized database that will be maintained and secured in accordance with all applicable federal, state, and local laws, regulations, and guidelines, including, without limitation, HIPAA. The Settlement Administrator shall ensure that information is recorded and used properly, that an orderly system of data management and maintenance is adopted, and that the information is retained under responsible custody. At the conclusion of the Settlement, the information will be destroyed, and duly certified as such to the Released Parties and Class Counsel.

7.7     All information submitted by Eligible Claimants and Eligible Personal Injury Claimants to the Settlement Administrator shall be treated as "Confidential Information" under the terms of the existing protective order entered by the Court (Dkt. 99) in this Action. The Parties, the applicable courts, the Settlement Administrator, and such other persons for whom access is

determined by the Settlement Administrator as necessary for the proper and efficient implementation of this Agreement, and their respective agents and representatives, will have access to all information regarding material submitted by Eligible Claimants and Eligible Personal Injury Claimants and generated in connection with the processing of such submissions solely for the purpose of the implementation of this Agreement. The Settlement Administrator shall make such information available to Class Counsel, Released Parties, and/or the Court at such times and in such method as those persons and entities reasonably require for purposes of implementing this Agreement or as may be otherwise required.

7.8     Neither the Settlement Administrator nor any employee or agent of the Settlement Administrator shall be liable to any Eligible Claimant, Eligible Personal Injury Claimant, or their respective counsel for any acts or omissions in connection with the Settlement except for willful misconduct. Nothing in this Agreement confers on any Eligible Claimant, Eligible Personal Injury Claimant, or their respective counsel any privity of contract with, or other right to institute any action against, the Settlement Administrator and those working under the direction and control of the Settlement Administrator. In the event that the Settlement Administrator must comply with any discovery obligations related to his/her work under this Agreement, the requesting party bears the cost of complying with such discovery obligation and such work and costs are expressly excluded from this Agreement. The Settlement Administrator shall be indemnified and held harmless by the Eligible Claimants and the Settlement Fund against reasonable expenses, costs and fees (including attorneys' fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Settlement Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the Settlement Administrator was grossly negligent or acted with

willful misconduct in connection with the administration of this Fund.   This foregoing Section 7.8 also applies to any administrative assistance vendors hired by the Settlement Administrator.

## SECTION 8: REPRESENTATIONS AND WARRANTIES

8.1     The Class Representatives represent and warrant that for at least one (1) year during the Class Period they have owned and have resided in a Household within the Class Area with a Private Well Drinking Water Source.

8.2     The Parties represent and warrant they are voluntarily entering into this Agreement as a result of arms'-length negotiations among their counsel, and that in executing this Agreement, they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently-selected  counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof.   The Parties acknowledge that they have not been influenced to any extent whatsoever in executing this Agreement by any representations, statements, or omissions pertaining to any of the foregoing, except as specifically set forth in this Agreement.   Each Party assumes the risk of mistakes as to facts or law.

8.3     The Parties represent and warrant that they have carefully read the contents of this Agreement, and that this Agreement is signed freely by each individual executing this Agreement on behalf of the Parties.   The Parties further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the Settlement, this Agreement and all of the matters pertaining thereto, as he, she, or it deems necessary.

8.4     Each individual executing this Agreement on behalf of any Party personally represents and warrants to the other Parties that he or she has the authority to execute this

Agreement on behalf of, and fully bind, each such Party he or she represents or purports to represent.

## SECTION 9: TERMINATION OF AGREEMENT

9.1     If any Defendant exercises its right to terminate this Settlement under Section 3.4 due to any "mass" or "class" Objections, or under Section 3.5 due to the number of Class Members who opt out of the Settlement, or because any federal or state authority objects to or requires material modifications to the Agreement, this Agreement shall automatically terminate and become null and void, without prejudice to ability of the Parties, at each of their respective sole option and discretion, to attempt to negotiate a settlement on different terms.

9.2     If the Court declines to approve this Agreement and Settlement without modification, this Agreement shall automatically terminate and become null and void, without prejudice to ability of the Parties, at each of their respective sole option and discretion, to agree to any proposed modifications or attempt to negotiate a settlement on different terms.  Notwithstanding the preceding sentence, the Court's entry of an order awarding Class Counsel an amount for attorneys' fees or expenses less than the amounts requested by Class Counsel shall not be grounds to void this Agreement.  The only remedy in the event of a fee or expense award less than Class Counsel's request shall be a separate appeal by Class Counsel of the fee or expenses award provided by the Court.

9.3     If an appeal challenging the approval of this Settlement results in an order reversing or vacating the Final Approval Order as to the approval of the Settlement or the certification of the Settlement Class, any Party may undertake, at its sole option, discretion, and expense, to pursue further review (including panel rehearing, *en banc* rehearing, or a petition for *certiorari*) of that appellate order.  If no Party timely pursues such further review, or if pursuit of such further review

fails to secure reinstatement of the Final Approval Order without modification, the Agreement shall automatically terminate and become null and void, without prejudice to ability of the Parties, at each of their respective sole option and discretion, to attempt to negotiate a settlement on different terms

9.4     If a Party to this Agreement materially breaches the Agreement before the Effective Date, if the breaching Party fails to cure the breach within sixty-three (63) days after receiving written notice of the breach, and if a Party aggrieved by the breach exercises the right to terminate the Agreement based on the breach, this Agreement shall automatically terminate and become null and void, without prejudice to ability of the Parties, at each of their respective sole option and discretion, to attempt to negotiate a settlement on different terms.

9.5     If Class Counsel does not provide the executed copies of the Agreements to Participate in accordance with Section 3.3(b), this Agreement shall automatically terminate and become null and void, without prejudice to ability of the Parties, at each of their respective sole option and discretion, to attempt to negotiate a settlement on different terms

9.6     If this Agreement is terminated and rendered null and void for any reason specified in this Section, the following shall occur:

a.      The Action shall for all purposes revert to its status as of January 6, 2021, reserving to the Parties all claims and defenses, and counsel for the Parties agree to jointly seek postponement of all deadlines then existing for a period of at least one month from the date of the termination of this Agreement;

b.      All Releases and Orders delivered pursuant to the Agreement shall be null and void; none of the terms of this Agreement (except for Sections 2.3, 7.6, 7.7, 10, 11.3, 11.6, 11.12, and 11.14) shall be effective or enforceable; and neither the fact nor the terms of this Agreement shall

be offered or received in evidence in the Action or in any other action or proceeding for any purpose; and

c.      The Settlement and all proceedings had in connection therewith shall be without prejudice to the *status quo ante* rights of the Parties, and the Parties further agree to jointly move the Court to vacate all Orders issued pursuant to the Settlement.

## SECTION 10: CONFIDENTIALITY

10.1    The Parties may, at their discretion, issue publicity, press release, or other public statements regarding this Settlement, whether unilaterally or as jointly agreed to in writing by all Parties.  Any jointly agreed or other statement shall not limit Defendants' ability to provide information about the Settlement to their employees, accountants, attorneys, insurers, shareholders, or other stakeholders or in accordance with legal requirements or to limit Class Counsels' ability to provide notice or information about the Settlement to Class Members or in accordance with legal requirements.

10.2    The Parties, Class Counsel, and counsel for the Defendants shall keep strictly confidential and not disclose to any third party any non-public information exchanged during or otherwise regarding the negotiation of the Settlement.

10.3    No later than sixty-three (63) days after the Effective Date, Class Counsel, Plaintiffs, and the Settlement Administrator shall return or destroy (and certify in writing that they have destroyed) Defendants' Confidential and Highly Confidential documents produced in connection with the Action, settlement discussions, or the negotiation or performance of this Agreement.

**SECTION 11: MISCELLANEOUS**

11.1     <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the Parties, and it supersedes all prior agreements or understandings between or among them, oral or written, relating to the Settlement of the Action.

11.2     <u>Construction</u>. The Parties acknowledge that this Agreement was jointly drafted and agree that if any of its terms are ambiguous, then the rule of construction construing the ambiguity against the drafting party shall not be employed in the interpretation of this Agreement.

11.3     <u>Governing Law</u>. The Agreement shall be governed and construed by the substantive law of the State of Wisconsin, without application of Wisconsin's choice-of-law rules. Jurisdiction and venue for all proceedings in connection with the Agreement, or arising as a result of any matter relating to this Settlement, or addressed in the Agreement, shall be in the United States District Court for the District of South Carolina.

11.4     <u>Reasonable Extensions</u>. The Parties may agree in writing to reasonable extensions of time to carry out any of the provisions of the Agreement, subject to approval by the Court if required.

11.5     <u>Amendment</u>. This Agreement may be amended only by a writing executed by all signatories hereto, provided that after entry of the Preliminary Approval Order, this Agreement may be modified or amended only by written agreement signed on behalf of the Parties and approved by the Court.

11.6     <u>Retention of Jurisdiction</u>. The United States District Court for the District of South Carolina shall retain jurisdiction over the Parties to resolve any dispute that may arise regarding this Agreement.

11.7     <u>Severability.</u> The provisions of this Agreement are not severable.

11.8    Waiver.    The provisions of this Agreement may be waived only by written agreement signed by the waiving party.  The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior to, subsequent to, or contemporaneous with this Agreement.

11.9    Force Majeure.  The failure of any Party to perform any of its obligations hereunder shall not subject any Party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by Acts of God, fires, accidents, other natural disasters, diseases, pandemics, or other wide-spread infectious disease events, interruptions or delays in communications or transportation, labor disputes or shortages, shortages of material or supplies, governmental laws, rules or regulations of other governmental bodies or tribunals, acts or failures to act of any third parties, or any other similar or different circumstances or causes beyond the reasonable control of such Party.

11.10    Binding Nature.  This Agreement shall be binding upon and inure to the benefit of the Parties, the Participating Class Members, and their respective agents, employees, representatives, heirs, executors, administrators, successors, and assigns.

11.11    Third-Party Beneficiaries.  This Agreement does not create any third-party beneficiaries, except Participating Class Members and the Released Parties other than Defendants, each of whom is an intended third-party beneficiary.

11.12    No Liability.    No Person shall have any claim against any Plaintiffs, Class Members, Class Counsel, Released Parties, counsel for Defendants, or the Settlement Administrator based on actions that any Plaintiffs, Class Members, Class Counsel, Released Persons, counsel for Defendants, or the Settlement Administrator were required or permitted to take under this Agreement.

11.13   Execution.  This Agreement may be executed in counterparts and shall be binding upon each Party and all Parties executing this or any counterpart.

11.14   Notices.  Any notice, demand, or other communication required to be given to a Party under this Agreement shall be in writing and shall be deemed duly given upon receipt if it is addressed to the intended recipient as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

To Plaintiffs or Class Members:

Paul J. Napoli, Esq.
Hunter Shkolnik, Esq.
Napoli Shkolnik
270 Munoz Rivera Ave, Ste 201
Hato Rey, PR 00918
(787) 493-5088
PNapoli@NSPRLaw.com
Hunter@NSPRlaw.com
Planciotti@napolilaw.com

Robert A. Bilott, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202-3957
(513) 381-2838
bilott@taftlaw.com

To Tyco Fire Products LP and Chemguard, Inc.:

Joseph G. Petrosinelli, Esq.
Liam J. Montgomery, Esq.
Williams & Connolly, LLP
725 12th Street, N.W.
Washington, DC  20005

To ChemDesign, Inc.:

J. Hayes Ryan, Esq.
Jonathan B. Blakley, Esq.
Gordon Rees Scully Mansukhani, LLP
1 N. Franklin Street, Ste. 800

Chicago, IL 60606

Executed and Agreed, this 6th day of January, 2021.

_____

**Paul Napoli**
**COUNSEL FOR PLAINTIFFS AND CO-**
**CLASS COUNSEL**

_____

**Robert Bilott**
**CO-CLASS COUNSEL**

_____

**COUNSEL FOR TYCO FIRE PRODUCTS LP**
**and CHEMGUARD, INC.**

_____

**COUNSEL FOR CHEMDESIGN PRODUCTS,**
**INC.**

Executed and Agreed, this 6th day of January, 2021.

_____

**Paul Napoli**
**COUNSEL FOR PLAINTIFFS AND CO-CLASS COUNSEL**

_____

**Robert Bilott**
**CO-CLASS COUNSEL**

_____

**COUNSEL FOR TYCO FIRE PRODUCTS LP and CHEMGUARD, INC.**

_____

**COUNSEL FOR CHEMDESIGN PRODUCTS, INC.**

Executed and Agreed, this 6th day of January, 2021.


_____

**Paul Napoli**
**COUNSEL FOR PLAINTIFFS AND CO-**
**CLASS COUNSEL**


_____

**Robert Bilott**
**CO-CLASS COUNSEL**

_____

**COUNSEL FOR TYCO FIRE PRODUCTS LP**
**and CHEMGUARD, INC.**


_____

**COUNSEL FOR CHEMDESIGN PRODUCTS,**
**INC.**

Exhibit A

# Exhibit A: Class Area



For illustrative purposes only.
Precise class area defined in Agreement.

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG <br><br> **This Document relates to** <br> ***Campbell v. Tyco Fire Products LP et al.***, <br> **No. 2:19-cv-00422-RMG** |

**[PROPOSED] FINAL ORDER AND JUDGMENT OF DISMISSAL WITH PREJUDICE**

**WHEREAS** Plaintiffs RICHARD CAMPBELL and JOAN CAMPBELL ("Plaintiffs"), both individually and on behalf of all Settlement Class Members, and defendants TYCO FIRE PRODUCTS LP, CHEMGUARD INC., and CHEMDESIGN PRODUCTS INC. ("Defendants"), through their respective attorneys of record, having stipulated to the entry of this Final Order and Judgment of Dismissal with Prejudice ("Final Order and Judgment") without the taking of proof, without trial or adjudication of any fact or law herein, without this Final Order and Judgment constituting evidence of or an admission by Defendants regarding any issue of fact or law alleged in the complaint herein, and without Defendants admitting any liability, and good cause appearing;

**WHEREAS**, by order dated _____, 2021 ("Preliminary Approval Order"), this Court granted preliminary approval of the proposed class action settlement between the Parties;

**WHEREAS**, the Court also provisionally certified a Settlement Class and appointed Class Counsel and a class representative for settlement purposes only, and approved the procedure for giving notice and the forms of notice.

**WHEREAS**, on _____, 2021, the Court held a duly noticed final fairness hearing ("Fairness Hearing") to consider, among other things: (1) whether the terms and conditions of the settlement and Settlement Agreement (the "Settlement Agreement" or "Agreement") are fair, reasonable, and adequate; (2) whether the Settlement Class should be finally certified for purposes of settlement only; (3) whether a judgment should be entered dismissing Plaintiffs' complaint on the merits and with prejudice in favor of Defendants and against all persons or entities who are

Settlement Class Members; and (4) whether and what amount to award attorneys' fees and expenses to counsel for the Settlement Class;

**WHEREAS**, the Court considered all matters submitted to it at the Fairness Hearing and otherwise, and it appears that notice substantially in the form approved by the Court in the Preliminary Approval Order was given in the manner that the Court ordered;

**WHEREAS**, the settlement was the result of extended, arms'-length negotiations;

**WHEREAS**, counsel for the parties are highly experienced in this type of litigation, with full knowledge of the risks inherent in this Action, and independent investigations by counsel for the parties suffices to enable the parties to make an informed decisions as to the fairness and adequacy of the Settlement;

**WHEREAS**, the Court has determined after careful consideration that the proposed settlement of the claims of the Settlement Class Members against Defendants, as well as the release of Defendants and the Released Parties, the significant relief provided to the Settlement Class Members—in the form of Defendants' agreement to distribute up to _____ Dollars ($_____.00) to eligible Settlement Class Members as described in the Agreement, and the award of attorneys' fees and expenses requested, are fair, reasonable and adequate;

**WHEREAS,** the Court issued an opinion ("Memorandum Opinion") on _____, 2021 addressing Class Counsel's request for attorneys' fees and costs.

**NOW, THEREFORE,** for the reasons stated herein, in the Preliminary Approval Order, on the record at the Fairness Hearing, and in the Court's Memorandum Opinion, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1.     **Incorporation of Settlement Agreement.**   The Agreement, including any attachments thereto, is expressly incorporated by reference into this Final Order and Judgment and made a part hereof for all purposes.  Except where otherwise noted, all capitalized terms used in this Final Order and Judgment shall have the meanings set forth in the Agreement.

2.     **Jurisdiction.**     This Court has subject-matter jurisdiction over this Action, including, without limitation, jurisdiction to approve the proposed settlement, to grant final certification of the Settlement Class, to settle and release all claims arising out of the transactions alleged in Plaintiffs' complaint in the Action, and to dismiss this Action on the merits and with prejudice.   This Court has personal jurisdiction over the parties to this action, including the Settlement Class Members.

3.     **Final Certification of Settlement Class.**  The Court finds, for settlement purposes only and conditioned upon the entry of this Final Order and Judgment and upon occurrence of the Effective Date, that the prerequisites for a class action under Federal Rule of Civil Procedure 23(a) and (b)(3) have been satisfied as provided for in the Preliminary Approval Order.  The Court hereby finds that the Settlement Class meets all requirements of Federal Rule of Civil Procedure 23(a) and (b)(3) for certification of the class claims alleged in the Action, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the class representative and Class Counsel; (e) predominance of common questions of fact and law among the Settlement Class; and (f) superiority.

4.     The Court hereby finally certifies this Action for settlement purposes only as a class action on behalf of the following settlement class (the "Settlement Class"):

> All persons who, during the period between January 1, 1965 and December 31, 2020, currently reside or formerly resided in or currently own or formerly owned, (i) a property with a Private Well Drinking Water Source; (ii) within the area bounded in the north by University Drive, in the south by Heath Lane, in the west by Roosevelt Road and in the east by the Bay of Green Bay, all in the Town of Peshtigo, Wisconsin; (iii) for at least one (1) year during the Class Period. Excluded from the Settlement Class are Defendants, any entity in which any of them has a controlling interest, and any of their legal representatives, employees, corporate officers, heirs, successors, or assigns; the undersigned Judge and any member of the undersigned Judge's immediate family, and any other judicial officer who is or was assigned to this Action; and any attorneys who are employees, partners, members or shareholders of Class Counsel.

5.     As defined in the Agreement, "Settlement Class Member(s)" means any member of the Settlement Class who did not elect exclusion or opt out from the Settlement Class during the Notice period pursuant to the terms and conditions for exclusion set out in the Agreement, the Preliminary Approval Order, and the Notice.  Pursuant to Federal Rule of Civil Procedure 23(c)(3), all Settlement Class Members are bound by this Final Order and Judgment.

6.     Pursuant to Federal Rule of Civil Procedure Rule 23(a), the Court finds that the Plaintiffs in the Action, Richard Campbell and Joan Campbell, are Settlement Class Members, their claims are typical of the Settlement Class, and they have fairly and adequately protected the interests of the Settlement Class throughout the proceedings in the Action.  Accordingly, the Court hereby appoints Richard Campbell and Joan Campbell as class representatives.

7.     Having considered the factors set forth in Federal Rule of Civil Procedure 23(g)(1), the Court finds that Class Counsel has fairly and adequately represented the Settlement Class for purposes of entering into and implementing the Settlement, and thus, hereby appoints Class Counsel as counsel to represent the Settlement Class Members.

8.     Having considered their respective qualifications and experience, the Court hereby confirms the appointment of David R. Cohen, Esq. as Settlement Administrator and Matthew Garretson, Esq. as Class Notice Administrator for purposes of this Settlement.

9.     **Final Approval of Notice.**  The Court finds that notice was provided in accordance with the terms of the Agreement and this Court's Preliminary Approval Order and that such notice:

(a) constituted the best practicable notice under the circumstances of this Action to the Settlement Class, Settlement Class Members, and all other all persons and entities entitled to be provided with such notice;

(b) fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. § 1715, and any other applicable law(s); and

(c) was reasonably calculated, under the circumstances, to apprise the Settlement Class and Settlement Class Members of the (i) the nature and pendency of this class action, (ii) the definition of the class certified; (iii) the class claims, issues, and/or defenses; (iv) their right to enter an appearance through an attorney; (v) their right to exclude themselves from the Settlement Class and the proposed settlement upon request, (vi) their right to object to any aspect of the proposed settlement, (vii) the time and manner for requesting exclusion; (viii) their right to appear at the Fairness Hearing, and (ix) the binding effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all persons who do not request exclusion from the Settlement Class under Rule 23(c)(3).

10. **Final Approval of Settlement.** Because it appears that (1) settlement negotiations occurred at arm's length; (2) there was sufficient discovery and investigation of claims; (3) the proponents of the settlement are highly experienced in similar litigation; and (4) none of the Settlement Class objected, the Court will apply a presumption of fairness to the settlement. *See Brunson v. Louisiana-Pac. Corp.*, 818 F. Supp. 2d 922, 927 (D.S.C. 2011) (citing Newberg & Conte, Newberg on Class Actions (3d ed. 1992) § 11.41). In addition, because settlement in this matter preceded class certification, the Court has applied a heightened standard and has carefully assessed whether the terms of the settlement, as reflected in the Agreement, are fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e)(2). *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020). After application of the relevant factors, the Court finds that the terms and provisions of the Settlement, as set forth in the Agreement, including any and all amendments and

exhibits, have been entered into in good faith and are hereby fully and finally approved as fair, reasonable and adequate as to, and in the best interests of, Plaintiff and the Settlement Class Members.

11. **Final Approval of Plan of Allocation.** The Court finds that the plan of allocation of the settlement fund, as described in the Settlement Agreement, is fair, reasonable, and adequate as to all Settlement Class Members and therefore approves the same pursuant to Federal Rule of Civil Procedure 23(e).

12. **Dismissal.** This Action is hereby DISMISSED WITH PREJUDICE and without costs as against Defendants and the Released Parties. All Settlement Class Members who have not timely and validly opted out of this settlement are hereby bound by this Final Order and Judgment and the Release provided herein.

13. **Release.** Upon the Effective Date, the Releasing Parties (as that term is defined in the Agreement) shall be deemed to have, and by operation of this Final Order and Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties. Released Claims shall not include latent or unknown personal injury/disease claims, including those arising from Eligible Personal Injuries, that are held by Class Members who neither opt out of nor participate in the Settlement. Released Claims otherwise means and includes any and all past, present or future claims, demands, obligations, causes of action, rights, damages, costs, attorneys' fees, loss of services, earnings or consortium, future medical expenses, expenses and compensation of any nature whatsoever, whether based on tort, contract (express, implied or otherwise), statute or any other theory of recovery, and whether for compensatory or punitive damages, that the Class Members now have or may hereafter accrue or otherwise be acquired, in any way, including those arising out of or relating to (i) the acts, omissions or events

alleged in the Action, (ii) the Class Members' alleged exposure to or consumption of PFAS, (iii) the alleged presence of PFAS in, on, or around any property owned or occupied by the Class Members, including the Class Members' homes and drinking water wells, and (iv) the alleged presence of PFAS in the Class Members' water supply.

14.     The Released Claims include known and unknown claims relating to the Action, and the Agreement is expressly intended to cover and include all such injuries or damages, including all rights of action thereunder.  To the fullest extent possible, Settlement Class Members have expressly, knowingly, intelligently, and voluntarily waived any and all rights they may have under applicable state or federal laws restricting or limiting the scope and effect of the general release given herein to claims known, suspected, or unknown by Settlement Class Members at the time the Agreement was executed.  Settlement Class Members have expressly waived and relinquished any and all rights and benefits that they may have under, or that may be conferred upon them by, such state or federal laws, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In connection with such waiver and relinquishment, the Settlement Class Members have acknowledged that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to Released Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Released Claims, known or unknown, suspected or unsuspected, that they have against the Released Parties.  In furtherance of such intention, the release herein given by the Settlement Class Members to the Released Parties shall be and will remain in effect as a full and complete general release notwithstanding the discovery or existence of any such additional different claims or facts.  Each of the parties has expressly acknowledged that it was advised by its attorney of the contents and effect of any state or federal

law restricting or limiting the scope and effect of the general release given herein to claims known or suspected at the time the Agreement was executed, and with knowledge, each of the parties has expressly waived whatever benefits it may have had pursuant to such laws. Plaintiffs have acknowledged, and the Settlement Class Members shall be deemed by operation of the Final Order and Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the Settlement of which this release is a part.

15. The Settlement Class Members understand and acknowledge that they may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of the foregoing release, but agree that they have taken that possibility into account in reaching this Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which the Settlement Class Members expressly assume the risk, they fully, finally, and forever settle and release any and all claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts. The foregoing waiver includes, without limitation, an express waiver, to the fullest extent not prohibited by law, by the Settlement Class Members of any and all rights under California Civil Code Section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settlement Class Members understand California Civil Code Section 1542 and expressly waive its provisions. The Settlement Class Members also acknowledge and understand

that the Released Parties specifically and separately bargained for this waiver of the provisions of Section 1542 of the California Civil Code.

16.     The Parties agree that this release will not affect the bottled water and/or Point of Entry Treatment system Tyco has offered or been providing to residents in the Class Area (as defined herein). The Release will not affect the ability of eligible households to be connected to a municipal water line or other permanent drinking water remediation measure, which Tyco is separately providing in cooperation with the Wisconsin Department of Natural Resources.

17.     Members of the Settlement Class who have opted out of or sought exclusion from the settlement by the date set by the Court do not release their claims and will not obtain any benefits of the settlement.

18.     **Other Actions.**  The Court orders that, upon the Effective Date, the Agreement shall be the exclusive remedy for any and all Released Claims of Settlement Class Members.  The Court thus hereby permanently bars and enjoins Plaintiffs, all Settlement Class Members, and all persons acting on behalf of, or in concert or participation with such Plaintiffs or Settlement Class Members (including but not limited to the Releasing Parties), from:  (a) filing, commencing, asserting, prosecuting, supporting, maintaining, pursuing, continuing, intervening in, or participating in, or receiving any benefits from, any lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based upon or asserting any of the Released Claims; (b) bringing a class action on behalf of Plaintiffs or Settlement Class Members, seeking to certify a class that includes Plaintiffs or Settlement Class Members, or continuing to prosecute or participate in any previously filed and/or certified class action, in any lawsuit based upon or asserting any of the Released Claims.

19.    **No Admission.**  Neither the Agreement, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein, nor any of the documents or statements generated or received pursuant to the claims administration process, shall be:

(a)    offered by any person or received against Defendants as evidence or construed as or deemed to be evidence of any presumption, concession, or admission by Defendants of the truth of the facts alleged by the Plaintiff or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or other judicial or administrative proceeding, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of Defendants;

(b)    offered by any person or received against Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by Defendants or any other wrongdoing by Defendants;

(c)    offered by any person or received against Defendants or as evidence of a presumption, concession, or admission with respect to any default, liability, negligence, fault, or wrongdoing, or in any way interpreted, construed, deemed, invoked, offered, received in evidence, or referred to for any other reason against any of the Parties, in any civil, criminal, or administrative action or proceeding; provided, however, that nothing contained in this paragraph shall prevent the Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or this Final Order and Judgment, or in which the reasonableness, fairness, or good faith of the Parties in participating in the settlement (or any

agreement or order relating thereto) is an issue, or to enforce or effectuate provisions of the Agreement or this Final Order and Judgment; or

(d)     offered by any person or received against Plaintiffs as evidence or construed as or deemed to be evidence that any of Plaintiffs' claims lack merit.

20.     Notwithstanding the foregoing, Defendants may file the Agreement, this Final Order and Judgment, and/or any of the documents or statements referred to therein in support of any defense or claim that the Agreement and/or this Final Order and Judgment are binding on and shall have *res judicata*, *collateral estoppel*, and/or preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and/or any other Settlement Class Members, and each of them, as well as their heirs, executors, administrators, successors, assigns, and/or any other of the Releasing Parties.

21.     **Retention of Jurisdiction.**  Without in any way affecting the finality of this Final Order and Judgment, this Court retains exclusive and continuing jurisdiction over the Parties, including the Settlement Class, and all matters relating to the administration, consummation, validity, enforcement and interpretation of the Agreement and of this Final Order and Judgment, including, without limitation, for the purpose of:

(a) enforcing the terms and conditions of the Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Agreement, and/or this Final Order and Judgment (including, without limitation, whether a person or entity is or is not a Settlement Class Member; whether claims or causes of action allegedly related to this Action are or are not barred or released by this Final Order and Judgment; and whether persons are enjoined from pursuing any claims against Defendants);

(b) enabling any party to this Final Order and Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Judgment;

(c) entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate this Final Order and Judgment and the Agreement (including, without limitation, orders enjoining persons from pursuing any claims against Defendants), or to ensure the fair and orderly administration of the Settlement; and

(d) entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction over the Agreement, the Parties, and the Settlement Class Members.

22.     **Disputes.**  The Parties agree to negotiate in good faith to try to resolve any disputes that may arise relating to this Final Order and Judgment.  Plaintiffs shall give Defendants twenty-one (21) days' notice before filing an application or other pleading seeking contempt of court or other sanctions for any purported violation of this Final Order and Judgment.

23.     **Effective Date.**  This Final Order and Judgment shall take effect immediately upon entry thereof, without further notice to Plaintiffs, Defendants, or Settlement Class Members.

24.     **Approval of Attorneys' Fees, Costs, and Incentive Award.**  After considering the parties' submissions and all relevant factors, including the result achieved by Class Counsel on behalf of Settlement Class Members, for the reasons set forth in the Court's Memorandum Opinion, the Court finds that an attorneys' fee award of $_____.00 is fair and reasonable and awards same to Class Counsel, which is in lieu of any other fees Plaintiffs and/or his attorneys might otherwise have been entitled to recover, and this amount shall be inclusive of any and all reimbursements to Class Counsel for litigation costs and expenses. The Settlement Amount is also

subject to a "Common Benefit Holdback Assessment" under Case Management Order No. 3 Ordered by United States District Court Judge Richard Mark Gergel dated April 26, 2019. Such Order requires a holdback assessment of 6% allotted for common benefit attorneys' fees and 3% allotted for reimbursement of permissible common benefit costs and expenses from any settlements(s). Such monies shall be paid directly into an interest-bearing account established by future order of the Court.

25.     The attorneys' fee award and reimbursement of expenses shall be paid within the time provided for in Section 4.6 of the Agreement.

26.     **Miscellaneous.**  Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any provisions of the Agreement.

27.     In the event that the Effective Date does not occur, class certification shall be automatically vacated and this Final Order and Judgment, and all other orders entered and releases delivered in connection herewith, shall be vacated and shall become null and void.

28.     The Clerk shall enter this Final Order and Judgment forthwith.

**IT IS SO ORDERED** on this _____ day of _____, 2021.


_____
Hon. Richard M. Gergel, U.S. District Judge

Exhibit C

**CLASS ACTION NOTICE**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA**

**If, during the period between January 1, 1965 and December 31, 2020, you currently reside or formerly resided in or currently own or formerly owned, (i) a property with a Private Well Drinking Water Source; (ii) within the area bounded in the north by University Drive, in the south by Heath Lane, in the west by Roosevelt Road and in the east by the Bay of Green Bay, all in the Town of Peshtigo, Wisconsin; (iii) for at least one (1) year during the Class Period,**

**You may be eligible for a cash payment and your rights may be affected by a proposed class action settlement.**

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

The proposed Settlement is with Tyco Fire Products LP, Chemguard Inc., and ChemDesign Products Inc., ("Defendants") in a lawsuit alleging the contamination of private well drinking water sources with perfluorinated chemicals ("PFAS") in the portion of the Town of Peshtigo, Wisconsin described above (the "Class Area"). The proposed Settlement provides payments to affected current and former residents in the Class Area who owned real property in the Class Area and/or used a private well drinking water source while residing in the Class Area for (1) alleged loss of value to real property within the Class Area caused by the presence of PFAS in drinking water, (2) exposure to PFAS in drinking water, and/or (3) certain personal injuries allegedly caused by exposure to PFAS in drinking water.

The Court in charge of this case must conduct a hearing to decide whether to approve the proposed Settlement. No proceeds from the Settlement will be distributed until the Court approves the Settlement and the time for any and all appeals has expired.

Your legal rights and options – and the deadlines to exercise them – are explained in this notice. Your rights are affected whether you act or don't act. Please read this notice carefully.

# WHAT THIS NOTICE CONTAINS

BASIC INFORMATION…………………………………………………………….PAGE 3

1.    Why did I get this notice package?
2.    What are these lawsuits about?
3.    Why is this a class action?
4.    Why is there a Settlement?

WHO IS IN THE SETTLEMENT……………………………………………………...PAGE 4

5.    How do I know if I am a part of the Settlement?
6.    Which companies are included?

THE SETTLEMENT BENEFITS……………………………………………………….PAGE 4

7.    What does the Settlement provide?
8.    What do I have to do to receive class benefits?
9.    Does this settlement affect ongoing Tyco remediation measures in this area?

THE LAWYERS REPRESENTING YOU…………………………………...............PAGE 6

11.    Do I have a lawyer in this case?
12.    How will the lawyers be paid?

REQUESTING EXCLUSION FROM THE CLASS ACTION SETTLEMENT.............PAGE 6

13.    How do I opt out of the Settlement?

OBJECTING TO THE SETTLEMENT……………………………………………..PAGE 6

14.    How do I tell the Court if I don't like the Settlement?

THE COURT'S FAIRNESS HEARING……………………………………...............PAGE 7

15.    When and where will the Court decide whether to approve the Settlement?
16.    Do I have to come to the hearing?
17.    May I speak at the hearing?

IF YOU DO NOTHING…………………………………………………………...PAGE 8

18.    What happens if I do nothing at all?

GETTING MORE INFORMATION……………………………………………...PAGE 8

19.    How do I get more information?

# BASIC INFORMATION

1.      Why did I get this notice package?

You have received this Notice of Class Action Settlement because you have been identified as a potential member of the class on whose behalf claims will be settled, if the Court approves the proposed Settlement. The case involved in this proposed Settlement is *Campbell v. Tyco Fire Products LP, Chemguard Inc. and ChemDesign Products Inc.*, No. 2:19-cv-00422-RMG. The Court in charge of this cases is the United States District Court for the District of South Carolina, the Honorable Richard M. Gergel presiding.  The people who sued are called the Plaintiffs, and the companies they sued are called the Defendants.

The claims in the case are described in greater detail on page 3. The people covered by the proposed Settlement ("the Class Members") are individuals who, during the period between January 1, 1965 and December 31, 2020, currently reside or formerly resided in or currently own or formerly owned, (i) a property with a Private Well Drinking Water Source; (ii) within the area bounded in the north by University Drive, in the south by Heath Lane, in the west by Roosevelt Road and in the east by the Bay of Green Bay, all in the Town of Peshtigo, Wisconsin; (iii) for at least one (1) year during the Class Period.

The Court approved this notice being sent to you because you have a right to know about the proposed Settlement of this class action lawsuit, and about your options and your opportunity to object, before the Court decides whether to approve the Settlement. If the Court approves the proposed settlement, and after any objections and appeals are resolved, the parties will proceed to fulfill their obligations in accordance with the terms of the Settlement Agreement.

2.      What is this lawsuit about?

Tyco Fire Products LP owns and operates a Fire Technology Center at 2700 Industrial Parkway, in Marinette, Wisconsin and an additional facility at 1 Stanton Street in Marinette, Wisconsin, both of which are located to the north/northwest of the Class Area.  This case arises from Defendants' alleged releases of perfluorinated chemicals, including perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS), into the groundwater at the Fire Technology Center and/or the Stanton Street facility that subsequently made its way to private well drinking water sources in the Class Area. In 2018, Class Counsel filed an individual and class action lawsuit against Defendants alleging that their releases have impacted and continue to impact the private drinking water wells in the Class Area, causing loss of property value, damages related to exposure to PFAS, and certain personal injuries allegedly caused by PFAS exposure.  The court filings setting forth the Plaintiffs' claims against the Defendants may be viewed at [WEB ADDRESS].  That website also contains all other relevant filings in this case.

Defendants deny the allegations in this lawsuit and specifically deny and dispute the factual, scientific, medical, or other bases asserted in support of Plaintiffs' claims, including the Class Representatives' demands for damages related to PFAS, including PFOA and PFOS.

3.      Why is this case a class action?

        In a class action, one or more people, called Class Representatives sue on behalf of people who may have similar claims. All of the people represented by the Class Representatives are a "Class" or "Class Members." One court presides over the class-wide claims that the court determines should be addressed in one proceeding for all Class Members.  In this case, the Plaintiffs and Defendants have also made available a fund that can be used to provide payments to individuals who claim to have suffered certain personal injuries allegedly as a result of their exposure to PFAS in private well drinking water in the Class Area.

        On _____, 2021, U.S. District Judge Richard M. Gergel preliminarily certified the proposed class for purposes of a Class Settlement.

4.      Why is there a settlement?

        The Court did not decide in favor of the Class Representatives or Defendants in this case. The Class Representatives, with the advice of Class Counsel, and Defendants have agreed to the terms of this Settlement to avoid the cost, delay, and uncertainty that would come with additional litigation and trial. The Class Representatives and Class Counsel think the Settlement is best for Class Members because it provides certain relief now.  The agreement to settle is not an admission of fault by Defendants. Defendants specifically dispute the claims asserted in this case, including the claims of damages related to PFAS, including PFOA or PFOS.

## WHO IS IN THE SETTLEMENT?

        In order to be included in this Settlement, you must be a Class Member.

5.      How do I know if I am part of the Settlement?

        Judge Gergel has preliminarily certified a class which includes everyone who fits the following description:

        All persons who, during the period between January 1, 1965 and December 31, 2020, currently reside or formerly resided in or currently own or formerly owned, (i) a property with a Private Well Drinking Water Source; (ii) within the area bounded in the north by University Drive, in the south by Heath Lane, in the west by Roosevelt Road and in the east by the Bay of Green Bay, all in the Town of Peshtigo, Wisconsin; (iii) for at least one (1) year during the Class Period.

Because you have received this Notice of Class Action Settlement, you may be a member of the class described above.

6.      Which companies are included?

        Tyco Fire Products LP, Chemguard Inc. and ChemDesign Products Inc., all of the Defendants in this action, are included in this proposed Settlement.

**THE SETTLEMENT BENEFITS**

7.      What does the settlement provide?

Certain provisions of the proposed Settlement are described in this notice, but the documents on file with the Court set forth the Settlement and its terms more fully. Those documents are available for you to review at [WEB ADDRESS TBD]. The proposed Settlement is subject to Court approval.

The Settlement provides for benefits to the Class Members to resolve the Class Claims against Defendants.

Specifically, the Settlement provides for a Total Settlement Amount of $17.5 million, which will include attorney fees, litigation expenses, and administrative costs for this Settlement, in an amount to be determined by the Court at a later date, inclusive of common benefit fees of MDL 2873 if such fees and expenses are approved by the Court. The Total Settlement Amount ($17,500,000) will consist of $15 million for class action claims and $2.5 million for individual personal injury claims. Of the total, $11 million of the Total Settlement Amount will be used for the alleged loss of value to real property within the Class Area caused by the presence of PFAS in drinking water ("Real Property Class Damages"). A further $4 million has been allocated for alleged harms related to exposure to PFAS in drinking water ("Exposure Class Damages").

Finally, $2.5 million has been allocated to those individual Class Members who can provide proof that they suffered from (1) testicular cancer; (2) kidney cancer; (3) pregnancy-induced hypertension; (4) ulcerative colitis; and/or (5) thyroid disease (the "Eligible Personal Injuries") allegedly caused by exposure to PFAS in drinking water ("Personal Injury Damages"). Personal Injury Damages are separate and apart from the Class damages. Any monies from the Property Class Damages or Exposure Class Damages settlement funds that are not paid to eligible class members or for attorney fees, litigation expenses or administrative costs of this Settlement will escheat to the State of Wisconsin.

More specific information on potential ranges of settlement benefits available to participating Class Members can be found on this webpage maintained by Class Counsel: [WEB ADDRESS]

Once the Court enters final approval, this Settlement provides that Class Members, in exchange for these class benefits, will release and agree not to sue Defendants for any and all past, present or future claims, demands, obligations, causes of action, rights, damages, costs, attorneys' fees, loss of services, earnings or consortium, future medical expenses, expenses and compensation of any nature whatsoever, whether based on tort, contract (express, implied or otherwise), statute or any other theory of recovery, and whether for compensatory or punitive damages, that the Class Members now have or may hereafter accrue or otherwise be acquired, in any way, including those arising out of or relating to (i) the acts, omissions or events alleged in the Action, (ii) the Class Members' alleged exposure to or consumption of PFAS, (iii) the alleged presence of PFAS in, on, or around any property owned or occupied by the Class

Members, including the Class Members' homes and drinking water wells, and (iv) the alleged presence of PFAS in the Class Members' water supply. The release will not, however, include latent or unknown personal injury/disease claims, including those arising from Eligible Personal Injuries, that are held by Class Members who neither opt out of nor participate in the Settlement.

Defendants deny the claims in this case. If you have questions about the proposed settlement, please do not contact Defendants. Instead, you should contact Class Counsel at:

Paul J. Napoli, Esq.
Hunter Shkolnik, Esq.
Napoli Shkolnik
270 Munoz Rivera Ave, Ste 201
Hato Rey, PR 00918
(787) 493-5088
PNapoli@NSPRLaw.com
Hunter@NSPRlaw.com

Robert A. Bilott, Esq.
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202-3957
(513) 381-2838

8.     What do I have to do to receive class benefits?

To receive the class benefits you will be required to do one or both of the following by no later than [the same date as the Opt Out deadline].  First, to claim Real Property Class Damages and/or Exposure Class Damages, as described above, you will be required to submit a sworn declaration that certifies as truthful records sufficient to demonstrate that (1) you currently reside or formerly resided in or currently own or formerly owned a residential property in the Class Area for at least one year between January 1, 1965 and December 31, 2020; and, if applicable, that (2) you drank, cooked with, bathed in, or otherwise were exposed to water supplied from a Private Well Drinking Water Source.  Second, to claim Personal Injury Damages, you will also need to submit an additional sworn declaration that certifies as truthful records sufficient to demonstrate that you (1) currently reside or formerly resided in a residential property in the Class Area for at least one year between January 1, 1965 and December 31, 2020, (2) drank, cooked with, bathed in, or otherwise were exposed to water supplied from a Private Well Drinking Water Source, and (3) were medically diagnosed with one or more of the Eligible Personal Injuries, with the initial diagnosis occurring more than one year after you first resided in or lived on a residential property in the Class Area.

9.     Does this settlement affect ongoing Tyco remediation measures in this area?

No.  This settlement agreement will not affect the bottled water and/or Point of Entry Treatment system Tyco has offered or been providing and will not affect the ability of eligible households to be connected to a municipal water line or other permanent drinking water

remediation measure, which Tyco is separately providing in cooperation with the Wisconsin Department of Natural Resources.

## THE LAWYERS REPRESENTING YOU

10.    Do I have a lawyer in this case?

The Court approved the law firms of Napoli Shkolnik PLLC and Taft Stettinius & Hollister LLP as Interim Class Counsel to represent you and other Class Members. You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

11.    How will the lawyers be paid?

As part of the final approval of this Settlement, Class Counsel will ask the Court to approve payment of their reasonable attorneys' fees and expenses related to their work in this case.

Class Counsel will make their request for Attorneys' Fees and Expenses through a motion that will be filed with the Court prior to date of the Fairness Hearing and prior to the deadline for Class Members to file their Objections.  That motion will be made available at [WEB ADDRESS].

The Court will determine whether the payments and the specific amounts requested at that time are appropriate. These amounts will come out of the Settlement Amount. Defendants do not oppose this request for fees and expenses.

## REQUESTING EXCLUSION FROM THE CLASS ACTION SETTLEMENT

13.    How do I opt out of the Settlement?

If you do not want to participate in the Settlement, you must exclude yourself by filing a written request for exclusion. If you exclude yourself, you will receive none of the Settlement benefits, but will be free to pursue on your own behalf whatever legal rights you may have. Written requests for exclusion must be signed under penalty of perjury and include the potential Class Member's name, address, and telephone number, and expressly state the desire to be excluded from the Settlement Class in *Campbell v. Tyco Fire Products LP*, No. 2:19-cv-00422-RMG.  Such request must be (a) filed with the U.S. District Court Clerk, identifying this Action and its case number, postmarked on or before _____ (which is the end of the Opt Out Period), and (b) sent by first-class mail to Class Counsel and Defendant's counsel and postmarked on or before _____ (which is the end of the Opt Out Period) at the following addresses:

1) <u>U.S. District Court Clerk</u>:

   Robin L. Blume
   Clerk of Court, United States District Court for the District of South Carolina
   Charleston Federal Courthouse
   85 Broad Street
   Charleston, SC  29401

2) <u>Class Counsel</u>:

   Paul J. Napoli, Esq.
   Hunter Shkolnik, Esq.
   Napoli Shkolnik
   270 Munoz Rivera Ave, Ste 201
   Hato Rey, PR 00918
   (787) 493-5088
   PNapoli@NSPRLaw.com
   Hunter@NSPRlaw.com

   Robert A. Bilott, Esq.
   Taft Stettinius & Hollister LLP
   425 Walnut Street, Suite 1800
   Cincinnati, OH  45202-3957
   (513) 381-2838

3) <u>Counsel for Tyco Fire Products LP and Chemguard, Inc.</u>:

   Joseph G. Petrosinelli, Esq.
   Liam J. Montgomery, Esq.
   Williams & Connolly, LLP
   725 12th Street, N.W.
   Washington, DC  20005

4) <u>Counsel for ChemDesign Products, Inc.</u>:

   J. Hayes Ryan, Esq.
   Jonathan B. Blakley, Esq.
   Gordon Rees Scully Mansukhani, LLP
   1 N. Franklin Street, Ste. 800
   Chicago, IL 60606

## OBJECTING TO THE SETTLEMENT

14.	How do I tell the Court if I don't like the settlement?

If you are a Class Member, you can object to the Settlement if you don't like any part of it. The Court will consider your views. To object, you must send a letter saying that you object to

the *Campbell v. Tyco Fire Products LP* Settlement, and you must specifically state your objections. You must include your name, address, telephone number, and your signature; indicate whether you are a current or former employee, agent, or contractor of any Defendant or Class Counsel; and provide a detailed statement of the reason why you object to the Settlement. Mail the objection to the three places listed below, postmarked no later than [==SAME DATE AS OPT OUT DEADLINE==], 2021:

1) <u>U.S. District Court Clerk</u>:

   Robin L. Blume
   Clerk of Court, United States District Court for the District of South Carolina
   Charleston Federal Courthouse
   85 Broad Street
   Charleston, SC  29401

2) <u>Class Counsel</u>:

   Paul J. Napoli, Esq.
   Hunter Shkolnik, Esq.
   Napoli Shkolnik
   270 Munoz Rivera Ave, Ste 201
   Hato Rey, PR 00918
   (787) 493-5088
   PNapoli@NSPRLaw.com
   Hunter@NSPRlaw.com

   Robert A. Bilott, Esq.
   Taft Stettinius & Hollister LLP
   425 Walnut Street, Suite 1800
   Cincinnati, OH  45202-3957
   (513) 381-2838

3) <u>Counsel for Tyco Fire Products LP and Chemguard, Inc.</u>:

   Joseph G. Petrosinelli, Esq.
   Liam J. Montgomery, Esq.
   Williams & Connolly, LLP
   725 12th Street, N.W.
   Washington, DC  20005

4) <u>Counsel for ChemDesign Products, Inc.</u>:

   J. Hayes Ryan, Esq.
   Jonathan B. Blakley, Esq.
   Gordon Rees Scully Mansukhani, LLP
   1 N. Franklin Street, Ste. 800
   Chicago, IL 60606

If you object to the Settlement and if the Court denies your objection, you shall have seven (7) days from the date of the Court's order to opt out of the settlement following the procedure set forth above in Question 14.

## THE COURT'S FAIRNESS HEARING

15.     When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at _____ on _____, 2021, at the United States District Court for the District of South Carolina, 83 Meeting Street, Charleston, South Carolina  29401, in Courtroom ____. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them. The Court may also address Class Counsel's Motion for Attorney Fees and Expenses. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

16.     Do I have to come to the hearing?

You do not have to come to the Fairness Hearing. Class Counsel will answer questions Judge Gergel may have, but you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

17.     May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in the Fairness Hearing for *Campbell v. Tyco Fire Products LP, Chemguard Inc. and ChemDesign Products Inc.*, No. 2:19-cv-00422-RMG."  Be sure to include your name, address, telephone number, and your signature. Your "Notice of Intention to Appear" must be postmarked no later than _____, 2021, and must be sent to the three addresses listed in the "Objecting to the Settlement" section of this Notice.

## IF YOU DO NOTHING

18.     What happens if I do nothing at all?

If you do nothing at all, you will be bound by the release of Defendants in the lawsuit as described above, with the exception of latent or unknown personal injury/disease claims, including those arising from Eligible Personal Injuries, as described earlier.

## GETTING MORE INFORMATION

19. How do I get more information?

DO NOT CALL the Court or Defendants with questions about this Settlement. If you have questions about this Settlement, you should contact Class Counsel at:

> Paul J. Napoli, Esq.
> Hunter Shkolnik, Esq.
> Napoli Shkolnik
> 270 Munoz Rivera Ave, Ste 201
> Hato Rey, PR 00918
> (787) 493-5088
> PNapoli@NSPRLaw.com
> Hunter@NSPRlaw.com

> Robert A. Bilott, Esq.
> Taft Stettinius & Hollister LLP
> 425 Walnut Street, Suite 1800
> Cincinnati, OH 45202-3957
> (513) 381-2838

Additional information and documents pertaining to the Settlement can be found by visiting the website [WEB ADDRESS].

# Exhibit D

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>**This Document relates to**<br>***Campbell v. Tyco Fire Products LP et al.*,**<br>**No. 2:19-cv-00422-RMG** |

## [PROPOSED] PRELIMINARY ORDER APPROVING SETTLEMENT

Before the Court is the Joint Motion for Preliminary Approval of Class Action Settlement filed by the Class Representatives and Tyco Fire Products LP, Chemguard Inc. and ChemDesign Products Inc. ("Defendants," collectively with the Class Representatives, "Parties"). The Parties have moved pursuant to Federal Rule of Civil Procedure 23 for an order preliminarily approving the proposed settlement of the Class Claims in the above-captioned action, as well as related potential personal injury claims, in accordance with the Parties' First Amended Class Settlement Agreement dated January 6, 2021, as filed with the Court (the "Class Settlement Agreement"), which sets forth the terms and conditions for the proposed settlement of the Class Claims. The Parties also seek conditional certification of the Settlement Class and seek approval of a Notice Plan consistent with Rule 23 and applicable law to provide notice of the proposed class action settlement to the Class Members.

WHEREAS, the Court has considered the Class Settlement Agreement and accompanying exhibits and other documents;

WHEREAS, all Parties have consented to the entry of this Preliminary Approval Order; and

WHEREAS, the Court held a Preliminary Approval Hearing on _____, 2021, with the

Parties present through Counsel,

IT IS HEREBY ORDERED THAT:

1.      The Court designates Plaintiffs Richard Campbell and Joan Campbell as Class Representatives for purposes of this Settlement.

2.      The Court designates Paul Napoli and Hunter Shkolnik of Napoli Shkolnik and Robert Bilott of Taft Stettinius & Hollister LLP as Class Counsel for purposes of this Settlement.

3.      The Court confirms the authority of Class Counsel to execute the Class Settlement Agreement on behalf of the Class Members.

4.      The Court designates David R. Cohen, Esq. as Settlement Administrator and Matthew Garretson, Esq. as Class Notice Administrator for purposes of this Settlement.

5.      The Court has reviewed the Class Settlement Agreement and preliminarily approves the terms of the Class Settlement Agreement, subject to further consideration at a Fairness Hearing.

(a)     The Court preliminarily finds that the proposed Class Settlement Agreement is the product of informed, arm's-length negotiation by counsel and is presumptively fair, just, reasonable, valid and adequate, subject to any objections that may be raised at the Fairness Hearing.

(b)     The Court preliminarily finds that the Settlement Amount of $15,000,000 will be used to fund Class Benefits that will directly benefit the Class Members. Based on the Court's preliminary analysis, the Class Benefits represent a reasonable compromise of the relief sought by the Class Members through the Rule 23(b)(3) Class Claims against Defendants.

(c)     The Court preliminarily finds the Class Settlement is fair, adequate and reasonable, based upon the Court's consideration of several factors, including: (1) the posture of the case

at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; (4) the experience of counsel in the area of class action litigation. (5) the relative strength of the plaintiffs' case on the merits; (6) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (7) the anticipated duration and expense of additional litigation; (8) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (9) the degree of opposition to the settlement. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).

(d)     The Fairness Hearing shall be held before the Court on _____, 2021, at the United States District Court for the District of South Carolina, either through telephonic or video means, or in person at 85 Broad Street, Charleston, SC 29401. The Fairness Hearing will enable the Court to: (i) determine whether the proposed Settlement is fair, reasonable and adequate and should be approved by the Court under Rule 23(e), and whether a Final Approval Order should be entered; and (ii) consider such other matters as may properly come before the Court in connection with the approval of the proposed Class Settlement Agreement, approval of Class Counsel's attorneys' fees and expenses, and other matters related to approval and implementation of the Class Settlement Agreement.

6.     The Court finds that the Class Notice attached as Exhibit C to the Class Settlement Agreement is appropriate under the circumstances and is reasonably calculated to inform Class Members of the proposed Settlement, affords Class Members an opportunity to present their objections to the Settlement, and complies in all respects with the requirements of Rule 23 and applicable due process requirements.

7.     The Class Notice Administrator shall provide notice of the proposed Class Settlement Agreement to Class Members as required by Rule 23 of the Federal Rules of Civil Procedure and applicable law as set forth in the Notice Plan by causing a copy of the Class Notice to be mailed to Class Members no later than _____, 2021.

8.     Class Members may file an objection to the Class Settlement Agreement and/or appear at the Fairness Hearing personally or by counsel, provided that an appearance is served and filed as provided herein, to show cause, if any, why the Court should not (a) approve the Class Settlement Agreement as fair, reasonable, and adequate; (b) enter an order dismissing with prejudice and releasing the Released Claims against the Released Parties; or (c) allow Class Counsel to recover reasonable fees, costs and expenses (payable from the Settlement Amount) for their services. Unless the Court directs otherwise, procedures for lodging objections shall include the following:

(a)     Each Class Member wishing to object to the Class Settlement Agreement shall submit a timely written notice of their objection postmarked by _____, 2021.

(b)     Each such Class Member objection shall set forth the reasons for the Class Member's objection. The objection must be signed by the Class Member or the objector's duly authorized representative (including an attorney), and provide information identifying the objector as a Class Member, the objector's address, whether the objector intends to appear at the Fairness Hearing, whether the objector is a current or former employee, agent, or contractor of Class Counsel or any Defendant, and the reason or reasons for the objection, along with whatever legal authority, if any, the objector asserts to support the objection.

(c)     Any objections must be filed with the Clerk of Court, Robin L. Blume. Additionally, one copy of each written objection must be served upon each of the following counsel:

> Class Counsel:
>
> Paul J. Napoli, Esq.
> Hunter Shkolnik, Esq.
> Napoli Shkolnik
> 270 Munoz Rivera Ave, Ste 201
> Hato Rey, PR 00918
> (787) 493-5088
> PNapoli@NSPRLaw.com
> Hunter@NSPRlaw.com
>
> Robert A. Bilott, Esq.
> Taft Stettinius & Hollister LLP
> 425 Walnut Street, Suite 1800
> Cincinnati, OH 45202-3957
> (513) 381-2838
> bilott@taftlaw.com
>
> Counsel for Tyco Fire Products LP and Chemguard, Inc.:
>
> Joseph G. Petrosinelli, Esq.
> Liam J. Montgomery, Esq.
> Williams & Connolly, LLP
> 725 12th Street, N.W.
> Washington, DC 20005
>
> Counsel for ChemDesign Products, Inc.:
>
> J. Hayes Ryan, Esq.
> Jonathan B. Blakley, Esq.
> Gordon Rees Scully Mansukhani, LLP
> 1 N. Franklin Street, Ste. 800
> Chicago, IL 60606

9.     Class Members who object in the manner provided herein and whose objections are denied by the Court shall have seven (7) days from the date of the Court's order denying those objections to opt out of this Settlement in accordance with the procedure set forth in the Class Notice.  Class Members whose objections are denied and who do not opt out remain Class

Members and will be bound by the Class Settlement Agreement and Final Approval Order if finally approved following the Fairness Hearing. Any person who fails to object in the manner provided herein shall be deemed to have waived his or her objections and shall forever be barred from making any such objections in these Actions or in any other action or proceeding.

10.     Class Counsel shall file their motion for Attorneys' Fees, Costs, and Expenses no later than twenty-one (21) days prior to the Fairness Hearing Date specified in Paragraph ▆ of this Preliminary Approval Order. Any Class Member who wishes to file an objection to the Class Counsel's fee motion shall file such objection in writing no later than seven days prior to the Fairness Hearing. Any such objection must be filed with the Clerk of Court, Robin L. Blume, and shall set forth the same information as required in paragraph ▆ above. Additionally, one copy of said written objection must be served upon each of the following counsel:

> Class Counsel:
>
> Paul J. Napoli, Esq.
> Hunter Shkolnik, Esq.
> Napoli Shkolnik
> 270 Munoz Rivera Ave, Ste 201
> Hato Rey, PR 00918
> (787) 493-5088
> PNapoli@NSPRLaw.com
> Hunter@NSPRlaw.com
>
> Robert A. Bilott, Esq.
> Taft Stettinius & Hollister LLP
> 425 Walnut Street, Suite 1800
> Cincinnati, OH  45202-3957
> (513) 381-2838
> bilott@taftlaw.com
>
> Counsel for Tyco Fire Products LP and Chemguard, Inc.:
>
> Joseph G. Petrosinelli, Esq.
> Liam J. Montgomery, Esq.
> Williams & Connolly, LLP
> 725 12th Street, N.W.

Washington, DC  20005

Counsel for ChemDesign Products, Inc.:

J. Hayes Ryan, Esq.
Jonathan B. Blakley, Esq.
Gordon Rees Scully Mansukhani, LLP
1 N. Franklin Street, Ste. 800
Chicago, IL 60606

11.     The Court has considered the due process rights of absent Class Members and finds

that such rights are adequately protected.

12.     If it has not already done so, Defendants shall provide notice of this proposed Class

Action Settlement to the appropriate federal and state officials pursuant to the requirements of the

Class Action Fairness Act, providing a copy of each such notice to Class Counsel when such notice

is sent.

13.     The proceedings in the above-captioned case as to Defendants are hereby stayed,

pending the final determination of whether the Class Settlement Agreement should be approved,

except for those proceedings necessary to carry out or enforce the terms of the Class Settlement

Agreement.

DONE the ____ day of _____, 2021.


_____
RICHARD M. GERGEL
UNITED STATES DISTRICT JUDGE

# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG<br><br>**This Document relates to**<br>***Campbell v. Tyco Fire Products LP et al.*,**<br>**No. 2:19-cv-00422-RMG** |

**PLAINTIFFS' AGREEMENT TO PARTICIPATE
IN PROPOSED CLASS ACTION SETTLEMENT**

This Participation Agreement (the "Participation Agreement") sets forth the agreement of

plaintiffs Richard Campbell and Joan Campbell (collectively the "Named Plaintiffs") to

participate in the proposed class and personal injury settlement in *Campbell v. Tyco Fire*

*Products LP, Chemguard Inc. and ChemDesign Products Inc.*, No. 2:19-cv-00422-RMG

("*Campbell*"). By signing this Participation Agreement, the Named Plaintiffs:

- Acknowledge that they are each represented by competent counsel and are satisfied with the advice they have received from such counsel;

- Acknowledge that they each have been furnished with a copy of the First Amended Class Settlement and Release Agreement ("Settlement Agreement") in *Campbell* dated December 23, 2020 and all exhibits thereto, as well as any other documents that may have been made available upon their request, have carefully read and understand the Settlement Agreement and this Participation Agreement, understand and have evaluated the risks of participation in the Settlement Agreement, and have relied solely on the information contained in the Settlement Agreement and any advice from their attorneys in determining to participate in the Settlement Agreement;

- Acknowledge and agree that they each currently reside or formerly resided in or currently own or formerly owned, (i) a property with a Private Well Drinking Water Source (as defined in the Settlement Agreement); (ii) within the Class Area (as defined in the Settlement Agreement); (iii) for at least one (1) year during the Class Period (as defined in the Settlement Agreement);

- Agree that each of them has been given the opportunity to ask questions of, and receive answers from, their attorneys regarding the terms and conditions of the Settlement Agreement and this Participation Agreement; and have been given the opportunity to obtain such additional information necessary to verify the accuracy of the information

that was otherwise provided to them;

- Agree that in event of any conflict or inconsistency between this Participation Agreement and the Settlement Agreement, the terms and conditions of the Settlement Agreement will control;

- Agree that neither of them has been furnished with any oral representation, warranty or information in connection with Settlement Agreement or this Participation Agreement by Tyco Fire Products LP, Chemguard Inc., and ChemDesign Products Inc., or any of their respective past, present or future successors, heirs, assigns, predecessors, parents, subsidiaries, divisions, affiliates, shareholders or members, directors and officers, partners, employees, representatives, employees, servants, agents, attorneys, counsel, insurers and any other representatives;

- Agree that each of them is entering into this Participation Agreement freely and voluntarily and will comply with the covenants and obligations applicable to each of them in this Participation Agreement and the Settlement Agreement; and

- Agree that neither this Participation Agreement, the Settlement Agreement, nor any provisions of either Agreement will be modified, discharged, or terminated except by an instrument in writing signed by the party against whom any waiver, change, discharge or termination is sought.

This Participation Agreement may be executed in any number of counterparts, and each of such counterparts will, for all purposes, constitute one agreement binding on the Named Plaintiffs, notwithstanding that each Named Plaintiff is not a signatory to the same counterpart. This Participation Agreement is not transferable or assignable by the undersigned. This Participation Agreement will be subject to and construed in accordance with the laws of the State of Wisconsin.

ACKNOWLEDGED AND AGREED:

_____                    Date:  _____
Name:  Richard Campbell


ACKNOWLEDGED AND AGREED:

_____                    Date:  _____
Name:  Joan Campbell

Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No. 2:18-mn-2873-RMG <br><br> **This Document relates to** <br> ***Campbell v. Tyco Fire Products LP et al.,*** <br> **No. 2:19-cv-00422-RMG** |

**PROOF OF CLASS CLAIM AND RELEASE**

## I.    GENERAL INSTRUCTIONS

1.     To recover as a Class Member for either Property Damages or Exposure Damages based on your claims in or related to the action entitled *Campbell v. Tyco Fire Products LP et al.*, No. 2:19-cv-00422-RMG (the "Litigation"), you must complete and, on page ▮▮ hereof, sign this Proof of Class Claim and Release form.  If you fail to submit a timely and properly addressed (as set forth in paragraph ▮▮ below) Proof of Class Claim and Release form, your claim may be rejected and you may not receive any recovery from the Class Qualified Settlement Fund created in connection with the proposed settlement.

2.     Submission of this Proof of Class Claim and Release form, however, does not assure that you will share in the proceeds of the settlement of the Litigation.

3.     YOU MUST MAIL OR SUBMIT ONLINE YOUR COMPLETED AND SIGNED PROOF OF CLASS CLAIM AND RELEASE FORM, ACCOMPANIED BY COPIES OF THE DOCUMENTS REQUESTED HEREIN, NO LATER THAN _____, 2021, ADDRESSED AS FOLLOWS:

*FILL IN MAILING AND WEB ADDRESS.*

If you are NOT a Class Member (as defined in the Notice of Proposed Settlement of Class Action ("Class Notice")), DO NOT submit a Proof of Class Claim and Release form.

4.      If you are a Class Member and you did not timely request exclusion in response to the Notice of Pendency of Class Action dated _____ and previously sent to Class Members, you are bound by the terms of any judgment entered in the Litigation, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A PROOF OF CLASS CLAIM AND RELEASE FORM.

## II.     CLAIMANT IDENTIFICATION

If you currently reside or formerly resided in or currently own or formerly owned, (i) a property with a Private Well Drinking Water Source (as defined in the Class Notice) (the "Property"); (ii) within the Class Area (as defined in the Class Notice); (iii) for at least one (1) year during the Class Period (as defined in the Class Notice), you may be a Class Member eligible to receive a benefit.

Use Part I of this form entitled "Claimant Identification" to identify yourself and your current contact information.   A SEPARATE CLAIM FORM MUST BE FILED BY EACH OWNER OF OR RESIDENT AT THE PROPERTY OR THE LEGAL REPRESENTATIVE OF SUCH OWNER OR RESIDENT UPON WHICH THIS CLAIM IS BASED.

Executors, administrators, guardians, conservators, and trustees must complete and sign this claim on behalf of persons represented by them and their authority must accompany this claim and their titles or capacities must be stated.  The Social Security (or taxpayer identification) number and telephone number of the claimant may be used in verifying the claim.  Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## III.    CLAIM FORM

Use Part II of this form entitled "Claim Form" to supply all required details of your claim for benefits.  If you need more space, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

*Campbell v. Tyco Fire Products LP et al.*

No. 2:19-cv-00422-RMG

PROOF OF CLASS CLAIM AND RELEASE

**Must Be Postmarked or Received No Later Than:**

**_____, 2021**

<u>Please Type or Print</u>

**PART I:      CLAIMANT IDENTIFICATION**

_____
Class Member's Name (First, Middle, Last)

_____
Current Street Address

_____      _____
City                                                            State or Province

_____      _____
Zip Code or Postal Code                            Country

_____
Social Security Number

_____      _____
Area Code              Telephone Number (work)

_____      _____
Area Code              Telephone Number (home or mobile)

_____
E-Mail Address

**PART II:**     **CLAIM FORM**

    **A.**    If you are or were an owner of a Property for at least one (1) year during the Class Period and are claiming benefits for loss of property value under the Property Damages sub-class, provide the following information on the property for which you are claiming such benefits:

_____

Property Street Address

_____    _____

City    State or Province

_____    _____

Zip Code or Postal Code    Country

| | | |
|---|---|---|
| Did the Property utilize a Private Well Drinking Water Source for at least one year while you owned it? | YES | NO |
| Do you have any documents demonstrating PFAS testing results on your Private Well Drinking Water Source during the Class Period? | YES | NO |

IF YES, YOU ARE REQUIRED TO SUBMIT COPIES OF SUCH DOCUMENTS WITH THE PROOF OF CLASS CLAIM AND RELEASE FORM.  FAILURE TO DO SO MAY RESULT IN DELAY OR REJECTION OF YOUR CLAIM

**B.** If you are or were a resident in the Class Area during the Class Period (January 1, 1965 through December 31, 2020) and drank, cooked with, bathed in, or otherwise was exposed to water supplied from a Private Well Drinking Water Source for at least one (1) year during the Class Period and are claiming benefits for Exposure Damages, provide the property address where you resided for at least one (1) year during the Class Period.

You may be eligible for both Property Damages and Exposure Damages if you both owned and resided at an eligible Property during the Class Period.

_____

Property Street Address

_____        _____

City                                                          State or Province

_____        _____

Zip Code or Postal Code                              Country

| Did the Property utilize a Private Well Drinking Water Source for at least one year while you owned it? | YES | NO |
|---|---|---|
| Did you drink, cook with, bathe in, or otherwise experience exposure to water supplied from a Private Well Drinking Water Source at the Property for at least one (1) year during the Class Period? | YES | NO |

If you require additional space, attach extra schedules in the same format as above. Sign and print your name on each additional page.

**YOU MUST READ AND SIGN THE RELEASE ON PAGE ▮. FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

**IV.    SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS**

I (We) submit this Proof of Class Claim and Release under the terms of the Settlement described in the Class Notice. I (We) also submit to the jurisdiction of the United States District

Court for the District of South Carolina, with respect to my (our) claim as a Class Member and for purposes of enforcing the release set forth herein. I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in the Litigation. I (We) agree to furnish additional information to the Claims Administrator to support this claim if requested to do so. I (We) have not submitted any other claim covering the same Property or Exposure during the Class Period and know of no other person having done so on my (our) behalf.

## V.    RELEASE

I (we) (the "Releasing Parties") agree to fully release and forever discharge the Tyco Fire Products LP, Chemguard Inc., and ChemDesign Products Inc. (the "Released Parties") from any and all past, present or future claims, demands, obligations, causes of action, rights, damages, costs, attorneys' fees, loss of services, earnings or consortium, future medical expenses, expenses and compensation of any nature whatsoever, whether based on tort, contract (express, implied or otherwise), statute or any other theory of recovery, and whether for compensatory or punitive damages, that the Releasing Parties now have or may hereafter accrue or otherwise be acquired, in any way, including those arising out of or relating to (i) the acts, omissions or events alleged in the Action, (ii) the Releasing Parties' alleged exposure to or consumption of PFAS, (iii) the alleged presence of PFAS in, on, or around any property owned or occupied by the Releasing Parties, including the Releasing Parties' homes and drinking water wells, and (iv) the alleged presence of PFAS in the Releasing Parties' water supply.

The Releasing Parties acknowledge and agree that the release set forth herein is a general release. The Releasing Parties expressly waive and assume the risk of any and all claims for damages that exist as of this date but of which the Releasing Parties do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and that, if known, would materially affect the Releasing Parties' decision to enter into this Agreement. The Releasing

Parties acknowledge and understand that they may have suffered damages or may incur liabilities that are unknown at the present time.

The Releasing Parties hereby covenant and agree to indemnify and hold Defendants harmless of and from any future or further exposure or payment arising out of the Released Claims, including but not limited to, any litigation, claim or settlement which may hereafter be instituted, presented or affected by or on behalf of the Releasing Parties, or by any person seeking contribution or subrogation in connection therewith. It is understood that the intent of this Agreement is that the Releasing Parties will protect, defend, and hold the Released Parties harmless from any future or further payments or exposure with regard to the matters addressed in this Agreement, including but not limited to claims for reimbursement of medical insurance benefits paid on behalf of the Releasing Parties and/or liens for legal services rendered to the Releasing Parties. In accordance with *Pierringer v. Hoger*, 21 Wis. 2d 182 (1963), the Releasing Parties agree to credit and satisfy that portion of the total damages, if any, which may have been caused by the Released Parties, as such may be determined in any litigation, claim or settlement which may hereafter be instituted in connection with the matters addressed in this Agreement, including without limitation any claim of NEGLIGENCE OR STRICT LIABILITY of the Released Parties. The Releasing Parties specifically contemplate that this release will have the same effect as the releases used in the case of *Pierringer v. Hoger*, 21 Wis. 2d 182 (1963).

The Releasing Parties agree that they shall not at any time hereafter whether directly or indirectly or individually or as a member or representative of a class commence, assign, or prosecute any claim, demand, or cause of action at law or otherwise for damages, loss or injury arising out of or relating to any act, error, omission, event or thing within the scope of the release set forth in Section ___ above. The Releasing Parties consent to the jurisdiction of this Court or, at

Defendants' sole option, any other court having jurisdiction to enter an injunction barring them from commencing or prosecuting any action or other proceeding, or seeking other benefits, based upon the Released Claims.

In making this waiver, the Releasing Parties understand and acknowledge that they may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of the foregoing release, but agree that they have taken that possibility into account in reaching this Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which the Releasing Parties expressly assume the risk, they fully, finally, and forever settle and release any and all claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts. The foregoing waiver includes, without limitation, an express waiver, to the fullest extent not prohibited by law, by the Releasing Parties of any and all rights under California Civil Code Section 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties understand California Civil Code Section 1542 and expressly waive its provisions. The Releasing Parties also acknowledge and understand that the Released Parties specifically and separately bargained for this waiver of the provisions of Section 1542 of the California Civil Code.

The Releasing Party understands this release will not affect the bottled water and/or Point of Entry Treatment system Tyco has offered or been providing to residents in the Class Area (as defined herein). The Release will not affect the ability of eligible households to be connected to a municipal water line or other permanent drinking water remediation measure, which Tyco is separately providing in cooperation with the Wisconsin Department of Natural Resources.

This release shall be of no force or effect unless and until the Court approves the Settlement and the Settlement becomes effective on the Effective Date (as defined in the Settlement Agreement).

I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

I (we) declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied on this Proof of Class Claim and Release form by the undersigned is true and correct.

Executed this _____ day of _____
                                          (Month/Year)

in _____
        (City)                    (State/Country)

_____
(Sign your name here)

_____
(Type or print your name here)

_____

(Capacity of person(s) signing,
*e.g.*, Beneficial Purchaser, Executor
or Administrator)

IN WITNESS OF THE ABOVE:

_____

(Adult witness must sign name here)

_____

(Type or print witness name here)

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1. Please sign the above release and declaration.

2. If this Claim is being made on behalf of Joint Claimants, then both must sign.

3. Remember to attach copies of supporting documentation, if available.

4. **Do not send** originals of any documents.

5. Keep a copy of your claim form and all supporting documentation for your records.

6. If you desire an acknowledgment of receipt of your claim form, please send it Certified Mail, Return Receipt Requested.

7. If you move, please send your new address to:

   *CLAIMS ADMIN ADDRESS*

8. **Do not use red pen or highlighter** on the Proof of Class Claim and Release form or supporting documentation.

**THIS PROOF OF CLASS CLAIM AND RELEASE MUST BE SUBMITTED ONLINE OR MAILED NO LATER THAN _____, 2021 ADDRESSED AS FOLLOWS:**

*MAILING AND WEB ADDRESS*

Exhibit G-1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No.  2:18-mn-2873-RMG<br><br>**This Document relates to**<br>***Campbell v. Tyco Fire Products LP et al.,***<br>**No. 2:19-cv-00422-RMG** |

**PROOF OF PERSONAL INJURY CLAIM**

## I.    GENERAL INSTRUCTIONS

1.     To recover as an Eligible Personal Injury Claimant based on your claims in or related to the action entitled *Campbell v. Tyco Fire Products LP et al.*, No. 2:19-cv-00422-RMG (the "Litigation"), you must complete and, on page ___ hereof, sign this Proof of Personal Injury Claim.  If you fail to submit a timely and properly addressed (as set forth in paragraph ___ below) Proof of Personal Injury Claim form, your claim may be rejected and you may not receive any recovery from the Qualified Settlement Funds created in connection with the proposed settlement.

2.     Submission of this Proof of Personal Injury Claim form, however, does not assure that you will share in the proceeds of the settlement of the Litigation.

3.     YOU MUST MAIL OR SUBMIT ONLINE YOUR COMPLETED AND SIGNED PROOF OF PERSONAL INJURY CLAIM FORM, ACCOMPANIED BY COPIES OF THE DOCUMENTS REQUESTED HEREIN, NO LATER THAN [28 Days after Notice Sent], 2021, ADDRESSED AS FOLLOWS:

*FILL IN MAILING AND WEB ADDRESS.*

If you do not have proof of an Eligible Personal Injury (as defined in the Notice of Proposed Settlement of Class Action ("Class Notice")) DO NOT submit a Proof of Personal Injury Claim and Release form.

## II.     CLAIMANT IDENTIFICATION

If you (1) currently reside or formerly resided in a residential property in the Class Area for at least one year between January 1, 1965 and December 31, 2020, (2) drank, cooked with, bathed in, or otherwise were exposed to water supplied from a Private Well Drinking Water Source, and (3) were medically diagnosed with one or more of: (1) testicular cancer; (2) kidney cancer; (3) pregnancy-induced hypertension; (4) ulcerative colitis; or (5) thyroid disease (the "Eligible Personal Injuries"), with the initial diagnosis occurring more than one year after you first resided in or lived on a residential property in the Class Area, you may be a eligible to receive a benefit:

Use Part I of this form entitled "Claimant Identification" to identify yourself and your current contact information.  A SEPARATE CLAIM FORM MUST BE FILED BY EACH PERSONAL INJURY CLAIMAINT OR THE LEGAL REPRESENTATIVE OF SUCH PERSONAL INJURY CLAIMANT UPON WHICH THIS CLAIM IS BASED.

Executors, administrators, guardians, conservators, and trustees must complete and sign this claim on behalf of persons represented by them and their authority must accompany this claim and their titles or capacities must be stated.  The Social Security (or taxpayer identification) number and telephone number of the claimant may be used in verifying the claim.  Failure to provide the foregoing information could delay verification of your claim or result in rejection of the claim.

## III.     CLAIM FORM

Use Part II of this form entitled "Claim Form" to supply all required details of your claim for benefits.  If you need more space, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

*Campbell v. Tyco Fire Products LP et al.*

No. 2:19-cv-00422-RMG

PROOF OF PERSONAL INJURY CLAIM AND RELEASE

**Must Be Postmarked or Received No Later Than:**

**_____, 2021**

<u>Please Type or Print</u>

**PART I:      CLAIMANT IDENTIFICATION**

_____
Class Member's Name (First, Middle, Last)

_____
Current Street Address

_____          _____
City                                                                      State or Province

_____          _____
Zip Code or Postal Code                                    Country

_____
Social Security Number

_____          _____
Area Code                            Telephone Number (work)

_____          _____
Area Code                            Telephone Number (home or mobile)

_____
E-Mail Address

**PART II:**    **CLAIM FORM**

**A.**    If you (1) currently reside or formerly resided in a residential property in the Class Area for at least one year between January 1, 1965 and December 31, 2020, (2) drank, cooked with, bathed in, or otherwise were exposed to water supplied from a Private Well Drinking Water Source, and (3) were medically diagnosed with one or more of: (1) testicular cancer; (2) kidney cancer; (3) pregnancy-induced hypertension; (4) ulcerative colitis; or (5) thyroid disease (the "Eligible Personal Injuries"), with the initial diagnosis occurring more than one year after you first resided in or lived on a residential property in the Class Area, provide the following information:

Did or do you currently reside or formerly resided in a residential property in the Class Area (the "Property") for at least one year between January 1, 1965 and December 31, 2020?          YES          NO

Did the Property utilize a Private Well Drinking Water Source for at least one year while you owned it?          YES          NO

Please provide the address of the Property:

_____
Property Street Address

_____     _____
City                                          State or Province

_____     _____
Zip Code or Postal Code                       Country

Did the Property utilize a Private Well Drinking Water Source for at least one year while you owned it?          YES          NO

Did you drink, cook with, bathe in, or otherwise experience exposure to water supplied from a Private Well Drinking Water Source at the Property for at least one (1) year during the Class Period?          YES          NO

| Were you medically diagnosed with one or more of: (1) testicular cancer; (2) kidney cancer; (3) pregnancy-induced hypertension; (4) ulcerative colitis; or (5) thyroid disease, with the initial diagnosis occurring more than one year after you first resided in or lived on a residential property in the Class Area? | YES | NO |
|---|---|---|

IF YES, YOU ARE REQUIRED TO (1) SUBMIT MEDICAL RECORDS SUFFICIENT TO DEMONSTRATE YOUR DIAGNOSIS FOR ONE OR MORE OF THESE ELIGIBLE PERSONAL INJURIES AND (2) SIGN AND RETURN THE MEDICAL RECORD AUTHORIZATION RELEASE FORM INCLUDED WITH THIS PROOF OF PERSONAL INJURY CLAIM AND RELEASE.

FAILURE TO PROVIDE THIS DOCUMENTATION COULD DELAY OR CAUSE THE REJECTION OF YOUR CLAIM

If you require additional space, attach extra schedules in the same format as above. Sign and print your name on each additional page.

**SUBMISSION OF THIS CLAIM FORM WILL NOT GUARANTEE YOU WILL RECEIVE PAYMENT. IF YOU ARE FOUND ELIGIBLE TO RECEIVE A PAYMENT, YOU WILL BE REQUIRED TO SIGN A RELEASE PRIOR TO ANY SUCH PAYMENT BEING MADE.**

**IV.    SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS**

I (We) submit this Proof of Personal Injury Claim under the terms of the Settlement described in the Class Notice. I (We) also submit to the jurisdiction of the United States District Court for the District of South Carolina, with respect to my (our) claim as a Class Member and for purposes of enforcing the release set forth herein. I (We) further acknowledge that I am (we are)

bound by and subject to the terms of any judgment that may be entered in the Litigation. I (We) agree to furnish additional information to the Claims Administrator to support this claim if requested to do so. I (We) have not submitted any other claim covering the same Personal Injury(ies) during the Class Period and know of no other person having done so on my (our) behalf.

Executed this _____ day of _____

(Month/Year)

in _____
       (City)             (State/Country)

_____
(Sign your name here)

_____
(Type or print your name here)

_____
(Capacity of person(s) signing,
*e.g.*, Beneficial Purchaser, Executor
or Administrator)

IN WITNESS OF THE ABOVE:

_____
(Adult witness must sign name here)

_____
(Type or print witness name here)

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1. Please sign the above declaration.

2. Remember to attach copies of supporting documentation.

3. **Do not send** originals of any documents.

4. Keep a copy of your claim form and all supporting documentation for your records.

5. If you desire an acknowledgment of receipt of your claim form, please send it Certified Mail, Return Receipt Requested.

6. If you move, please send your new address to:

    *CLAIMS ADMIN ADDRESS*

7. **Do not use red pen or highlighter** on the Proof of Personal Injury Claim form or supporting documentation.

**THIS PROOF OF PERSONAL INJURY CLAIM MUST BE SUBMITTED ONLINE OR MAILED NO LATER THAN _____, 2021 ADDRESSED AS FOLLOWS:**

*MAILING AND WEB ADDRESS*

# Exhibit G-2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| **IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION** | MDL No.  2:18-mn-2873-RMG<br><br>**This Document relates to**<br>***Campbell v. Tyco Fire Products LP et al.***,<br>**No. 2:19-cv-00422-RMG** |

**RELEASE OF PERSONAL INJURY CLAIM**

## I.  GENERAL INSTRUCTIONS

1.    The Settlement Administrator has found you eligible to receive a payment for an Eligible Personal Injury based on your submission of a Proof of Personal Injury Form submitted in relation to claims in or related to the action entitled *Campbell v. Tyco Fire Products LP et al.*, No. 2:19-cv-00422-RMG (the "Litigation").  Before you may receive a payment, you must complete and, on page ___ hereof, sign this Release of Personal Injury Claim.  If you fail to submit a timely and properly addressed (as set forth in paragraph __ below) Release of Personal Injury Claim, your claim may be rejected and you may not receive any recovery from the Qualified Settlement Funds created in connection with the proposed settlement.

2.    YOU MUST MAIL OR SUBMIT ONLINE YOUR COMPLETED AND SIGNED RELEASE OF PERSONAL INJURY CLAIM FORM NO LATER THAN [28 Days after NOTICE OF ELIGIBILITY SENT], 2021, ADDRESSED AS FOLLOWS:

*FILL IN MAILING AND WEB ADDRESS.*

## II.  RELEASE

I (we) (the "Releasing Parties") agree to fully release and forever discharge the Tyco Fire Products LP, Chemguard Inc., and ChemDesign Products Inc. (the "Released Parties") from any and all past, present or future claims, demands, obligations, causes of action, rights, damages,

costs, attorneys' fees, loss of services, earnings or consortium, future medical expenses, expenses and compensation of any nature whatsoever, whether based on tort, contract (express, implied or otherwise), statute or any other theory of recovery, and whether for compensatory or punitive damages, that the Releasing Parties now have or may hereafter accrue or otherwise be acquired, in any way, including those arising out of or relating to (i) the acts, omissions or events alleged in the Action, (ii) the Releasing Parties' alleged exposure to or consumption of PFAS, (iii) the alleged presence of PFAS in, on, or around any property owned or occupied by the Releasing Parties, including the Releasing Parties' homes and drinking water wells, and (iv) the alleged presence of PFAS in the Releasing Parties' water supply.

The Releasing Parties acknowledge and agree that the release set forth herein is a general release. The Releasing Parties expressly waive and assume the risk of any and all claims for damages that exist as of this date but of which the Releasing Parties do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and that, if known, would materially affect the Releasing Parties' decision to enter into this Agreement. The Releasing Parties acknowledge and understand that they may have suffered damages or may incur liabilities that are unknown at the present time.

The Releasing Parties hereby covenant and agree to indemnify and hold Defendants harmless of and from any future or further exposure or payment arising out of the Released Claims, including but not limited to, any litigation, claim or settlement which may hereafter be instituted, presented or affected by or on behalf of the Releasing Parties, or by any person seeking contribution or subrogation in connection therewith. It is understood that the intent of this Agreement is that the Releasing Parties will protect, defend, and hold the Released Parties harmless from any future or further payments or exposure with regard to the matters addressed in

this Agreement, including but not limited to claims for reimbursement of medical insurance benefits paid on behalf of the Releasing Parties and/or liens for legal services rendered to the Releasing Parties.  In accordance with *Pierringer v. Hoger*, 21 Wis. 2d 182 (1963), the Releasing Parties agree to credit and satisfy that portion of the total damages, if any, which may have been caused by the Released Parties, as such may be determined in any litigation, claim or settlement which may hereafter be instituted in connection with the matters addressed in this Agreement, including without limitation any claim of NEGLIGENCE OR STRICT LIABILITY of the Released Parties.  The Releasing Parties specifically contemplate that this release will have the same effect as the releases used in the case of *Pierringer v. Hoger*, 21 Wis. 2d 182 (1963).

The Releasing Parties agree that they shall not at any time hereafter whether directly or indirectly or individually or as a member or representative of a class commence, assign, or prosecute any claim, demand, or cause of action at law or otherwise for damages, loss or injury arising out of or relating to any act, error, omission, event or thing within the scope of the release set forth in Section ___ above.  The Releasing Parties consent to the jurisdiction of this Court or, at Defendants' sole option, any other court having jurisdiction to enter an injunction barring them from commencing or prosecuting any action or other proceeding, or seeking other benefits, based upon the Released Claims.

In making this waiver, the Releasing Parties understand and acknowledge that they may hereafter discover facts in addition to or different from those that are currently known or believed to be true with respect to the subject matter of the foregoing release, but agree that they have taken that possibility into account in reaching this Agreement and that, notwithstanding the discovery or existence of any such additional or different facts, as to which the Releasing Parties expressly assume the risk, they fully, finally, and forever settle and release any and all claims, known or

unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts. The foregoing waiver includes, without limitation, an express waiver, to the fullest extent not prohibited by law, by the Releasing Parties of any and all rights under California Civil Code Section 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Releasing Parties understand California Civil Code Section 1542 and expressly waive its provisions. The Releasing Parties also acknowledge and understand that the Released Parties specifically and separately bargained for this waiver of the provisions of Section 1542 of the California Civil Code.

The Releasing Party understand this release will not affect the bottled water and/or Point of Entry Treatment system Tyco has offered or been providing to residents in the Class Area (as defined herein). The Release will not affect the ability of eligible households to be connected to a municipal water line or other permanent drinking water remediation measure, which Tyco is separately providing in cooperation with the Wisconsin Department of Natural Resources.

This release shall be of no force or effect unless and until the Court approves the Settlement and the Settlement becomes effective on the Effective Date (as defined in the Settlement Agreement).

I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

I (we) declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied on this Proof of Personal Injury Claim and Release form by the undersigned is true and correct.

Executed this _____ day of _____
                                                                    (Month/Year)
in _____
                        (City)                                  (State/Country)

_____
(Sign your name here)

_____
(Type or print your name here)

_____
(Capacity of person(s) signing,
*e.g.*, Beneficial Purchaser, Executor
or Administrator)

IN WITNESS OF THE ABOVE:

_____
(Adult witness must sign name here)

_____
(Type or print witness name here)

**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME. THANK YOU FOR YOUR PATIENCE.**

Reminder Checklist:

1. Please sign the above release and declaration.

2. **Do not send** originals of any documents.

3. Keep a copy of your release form and all supporting documentation for your records.

4. If you desire an acknowledgment of receipt of your release form, please send it Certified Mail, Return Receipt Requested.

5. If you  move, please send your new address to:

   *CLAIMS ADMIN ADDRESS*

6. **Do not use red pen or highlighter** on the Release of Personal Injury Claim form.

**THIS RELEASE OF PERSONAL INJURY CLAIM MUST BE SUBMITTED ONLINE OR MAILED NO LATER THAN _____, 2021 ADDRESSED AS FOLLOWS:**

*MAILING AND WEB ADDRESS*

# Exhibit H

**LIMITED AUTHORIZATION TO DISCLOSE HEALTH INFORMATION**
**(Pursuant to the Health Insurance Portability and Accountability Act "HIPAA," the HIPAA Privacy Rule, and relevant state law)**

TO:_____

Patient Name: _____ DOB: _____ **SSN:**_____

I, _____, hereby authorize you to release and furnish to _____ copies of the following information:

- All medical records, including inpatient, outpatient, and emergency room treatment, all clinical charts, reports, documents, correspondence, test results, statements, questionnaires / histories, office and doctor's handwritten notes, and records received by other physicians. Said medical records shall include all information regarding AIDS and HIV status.
- All autopsy, laboratory, histology, cytology, pathology, radiology, CT Scan, MRI, echocardiogram and cardiac catheterization reports.
- All radiology films, mammograms, myelograms, CT scans, photographs, bone scans, pathology/cytology/histology/autopsy/immunohistochemistry specimens, cardiac catheterization videos/CDs/films /reels, and echocardiogram videos.
- All pharmacy/prescription records including NOC numbers and drug information handouts/monographs.
- All billing records including all statements, itemized bills, and insurance records.
- The undersigned does not authorize the disclosure of "psychotherapy notes" as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR § 164.501.
- All employment or insurance records.
- All workers' compensation claims or records, including any report of injury, all treatment records, and evidence of any benefits received/paid.

1. To my medical provider: **this authorization is being forwarded by, or on behalf of, attorneys for the defendants. You are not authorized to discuss any aspect of the above-named person's medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on his or her medical or physical condition, unless you receive and additional authorization permitting such discussion. Subject to all applicable legal objections, this restriction does not apply to discussing my medical history, care, treatment, diagnosis, prognosis, information revealed by or in the medical records, or any other matter bearing on my medical or physical condition at a deposition or trial.**

2. I understand that the information in my health record may include information relating to sexually transmitted disease, acquired immunodeficiency syndrome (AIDS), or human immunodeficiency virus (HIV). It may also include information about behavioral or mental health services, and treatment for alcohol and drug abuse.

3. I understand that I have the right to revoke this authorization at any time. I understand that if I revoke this authorization I must do so in writing and present my written revocation to the health information management department. I understand the revocation will not apply to information that has already been released in response to this authorization. I understand the revocation will not apply to my insurance company when the law provides my insurer with the right to contest a claim under my policy. Unless otherwise revoked, this authorization will expire in one year.

4. I understand that authorizing the disclosure of this health information is voluntary. I can refuse to sign this authorization. I need not sign his form in order to assure treatment. I understand I may inspect or copy the information to be used or disclosed as provided in 45 CFR 164.524. I understand that any disclosure of information carries with it the potential for an unauthorized re-disclosure and the information may not be protected by federal confidentiality rules. If I have questions about disclosure of my health information, I can contact the releaser indicated above.

5. A notarized signature is not required. 45 CFR 164.508. A copy of this authorization may be used in place of an original.

Print Name: _____ (plaintiff/representative)

Signature: _____ Dated: _____